**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JEFF McMILLAN,

Defendant-Appellant.

Case Nos. 96-1054, 96-1076

(D.C. 94-CR-254-M)
(District of Colorado)

---

**ORDER AND JUDGMENT**[*]

---

Before PORFILIO, EBEL, and HENRY, Circuit Judges.

Mr. Jeffrey McMillan appeals his convictions for one count of possessing cocaine

with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and one count of using and

carrying a firearm in relation to a drug-trafficking crime, in violation of 18 U.S.C. §

924(c)(1). Mr. McMillan was tried jointly with six other defendants on various drug-

trafficking and drug conspiracy charges. Mr. McMillan appeals several issues through

counsel and one issue pro se, for which Mr. McMillan's trial counsel has filed an Anders

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

brief.[1]  Anders v. California, 386 U.S. 738, 744 (1967) ("[I]f counsel finds his [client's] case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw.  That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal.").  We consider all of these issues in this opinion.  For the reasons stated herein, we affirm Mr. McMillan's conviction under § 841(a)(1) and vacate and remand the § 924(c)(1) conviction for a new trial.

### I. Background

In April 1994, through confidential informant Patrick Isiah Thomas, federal agents first learned of Mr. McMillan's association with Trips Tapes and Records, and its parent company, Trips Enterprises, in Denver, Colorado.  The record indicates that the "Trips" businesses were mere shams and that the Trips headquarters and offices served as locations for the sale, packaging, and distribution of crack cocaine.  See Rec. vol. 3, exs. 27-28, 30.

Mr. Thomas, also associated with Trips, supplied information to the agents concerning the crack cocaine distribution activities of several Trips members, including Mr. McMillan.  See Rec. vol. 16 (transcript from joint trial with codefendant Lawrence

---

[1]      Mr. McMillan claims that the forfeiture of his property to the government, as proceeds of illegal drug transactions, before his sentencing in this criminal proceeding, violated the Double Jeopardy Clause.  See infra § II.F.

Williams, Nos. 96-1056, -1075, hereinafter "Williams Rec.") at 148. On July 7, 1994, Mr. Thomas, at the direction of government agents, contacted Mr. McMillan to arrange a meeting that night at Trips Enterprises' headquarters to repay a $150.00 debt Mr. Thomas owed Mr. McMillan. See id. at 187. Federal agents supplied Mr. Thomas with $150.00 and equipped Mr. Thomas with a transmitter. See id. at 190. At approximately 1 a.m. on July 8, 1994, Mr. McMillan arrived at Trips Enterprises and entered the building with Mr. Thomas. Over the wire, the agents heard the counting of money. See id. at 194. The agents, through video surveillance, saw Mr. McMillan exit Trips headquarters and then enter his car for "less than a minute" before resuming a conversation with Mr. Thomas outside of the building. Id. at 195.

The agents then paged Mr. Thomas, who informed the agents about the firearm that Mr. McMillan generally carried with him. See Rec. vol. 11 at 40-41, 43. In addition, Mr. Thomas told the agents that Lawrence Williams, another Trips associate, had given Mr. McMillan several small plastic bags of crack cocaine. See id. at 41. Mr. Thomas saw Mr. McMillan place them into the rear part of his car and informed the agents of the distribution site where Mr. McMillan generally supplied crack cocaine. See id. at 42, 14; vol 12 at 34. The agents and officers followed Mr. McMillan, and after losing track of him for approximately fifteen minutes, traced him to the specified location, near the designated crack house. See Rec. vol. 11 at 51-52.

3

After Mr. McMillan stopped his vehicle, the agents summoned Denver police officers and advised them to question Mr. McMillan. See id. at 53. Mr. McMillan was arrested for providing false information regarding his identity to the officers. A search of Mr. McMillan's vehicle revealed a loaded Ruger 9mm handgun under the driver's seat, cash totaling $1479.00, and approximately 120 grams of crack cocaine, divided into street level distribution quantities in individual plastic twist-tie bags. See id. at 56, Rec. vol. 1, doc. 7, att. 1 at 2.

In August 1995, a federal grand jury in the District of Colorado returned an indictment against Mr. McMillan and six other defendants, all of whom were associated with the Trips organization. The indictment charged Mr. McMillan, as a member of Trips, with conspiracy to distribute, possession with intent to distribute, and unlawfully using and carrying a firearm in relation to a drug trafficking crime. The jury could not reach a decision as to the conspiracy charge, and the government moved to have that charge dismissed, which the court granted. Mr. McMillan was found guilty of possession with intent to distribute and unlawfully using and carrying a firearm in relation to a drug-trafficking crime. He appeals these convictions.

Mr. McMillan raises several issues on appeal. First, he contends that he was entitled to discovery on his selective prosecution claims against the government. Second, he disputes the district court's admission of evidence from a warrantless search of the vehicle Mr. McMillan occupied. Third, he challenges his conviction under § 924(c)(1)

because of a defective jury instruction. Fourth, he claims that § 841(a)(1) and the relevant Sentencing Guideline are discriminatory and unconstitutional. Fifth, Mr. McMillan asserts that he was prejudiced by a joint trial. Finally, in his Anders brief, Mr. McMillan alleges that the civil forfeiture of his property was punitive and thus his subsequent conviction and sentencing violated the Double Jeopardy clause. We shall discuss each contention in turn.

## II. Discussion

*A. Selective Prosecution Claim*

Mr. McMillan first claims that the district court erred when it denied his and several other defendants' motion for discovery or dismissal based on their claim of racially based selective prosecution. We review a denial of discovery related to a selective prosecution claim for abuse of discretion. Cf. United States v. Furman, 31 F.3d 1034, 1037 (10th Cir.) (stating standard of review for motions to dismiss for selective prosecution), cert. denied, 513 U.S. 1050 (1994).

The necessary elements to establish a selective prosecution claim are demanding; the threshold showing necessary to obtain discovery is similarly high. See United States v. Armstrong, 16 S. Ct. 1480, 1486, 1488 (1996). When a prosecutor acts with probable cause, he has virtually unfettered discretion in his decision to prosecute. See id. Mr.

5

McMillan must provide at least "some evidence" tending to show the existence of the elements of a selective prosecution claim. Id. "The claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" Id. at 1487 (quoting Wayte v. United States, 470 U.S. 598, 608 (1985)). Specifically, Mr. McMillan must show that "'he has been singled out for prosecution while others similarly situated generally have not been proceeded against for the type of conduct forming the basis of the charge against him.'" Furman, 31 F.3d at 1037 (quoting United States v. Salazar, 720 F.2d 1482, 1487 (10th Cir. 1983)); see also Armstrong, 116 S. Ct. at 1487.

Mr. McMillan asserts that the federal prosecutor's decision to prosecute Mr. McMillan and other Trips associates in federal court rather than refer the case to state prosecutors, coupled with statistics of federally convicted crack cocaine traffickers' racial makeup, supply the necessary evidence. This is inadequate under the standard set forth in Armstrong. See 116 S. Ct. at 1488. As the Supreme Court stated in Armstrong, "it should not have been an insuperable task" to investigate whether "persons of other races were [being] prosecuted by the State of [Colorado and] were known to federal law enforcement officers, but were not prosecuted in federal court." Id. at 1489. Without some evidence tending to show racial disparity in the prosecution of similarly situated defendants in federal court, we cannot exercise judicial power over the "special province"

6

of the executive branch and examine the basis of the prosecution in this case. See id. at 1486 (quoting Heckler v. Chaney, 470 U.S. 821, 832 (1985)).

*B. Admission of Evidence*

Second, Mr. McMillan contends that the arresting officers searched his vehicle without probable cause. On appeal from a denial of a motion to suppress, we accept the trial court's factual findings unless clearly erroneous, and we consider all evidence in the light most favorable to the government. See United States v. Alcaron-Gonzalez, 73 F.3d 289, 291 (10th Cir. 1996). We review the ultimate reasonableness of the search de novo. See Ornelas v. United States, 116 S. Ct. 1657, 1663 (1996).

1. Reliability of the informant.

Mr. McMillan contends that Mr. Thomas was an unreliable informant whose information could not support probable cause for the warrantless search of Mr. McMillan's vehicle. Mr. Thomas was an active Trips associate when he agreed to cooperate with the authorities in April 1994. Mr. McMillan emphasizes Mr. Thomas's untrustworthiness as an informant. For example, during a controlled buy from another Trips associate, Mr. Thomas received an extra $150.00 from the Trips member. Mr. Thomas attempted to conceal the funds from the federal agents. See Williams Rec. vol. 11 at 73-74. On another occasion, Mr. Thomas informed the authorities that he had

7

purchased $150.00 worth of crack cocaine from Mr. McMillan, but Mr. Thomas never turned over any contraband to the agents. See id. at 60-61. In addition, Mr. Thomas also claimed to be a regular associate with Mr. McMillan during Mr. McMillan's distribution runs, but on the night in question, Mr. McMillan apparently refused to allow Mr. Thomas to accompany him. See id. at 47-48, 67. Finally, Mr. McMillan stresses that the vehicle Mr. McMillan was driving on the night in question was a different one than previously identified by Mr. Thomas as Mr. McMillan's regular car. See id. at 18, Rec. vol. 3 at 000809.

The government presented evidence that Mr. Thomas had previously provided reliable information. The agents confirmed that Mr. McMillan was a Trips associate. In addition, the agents corroborated that Mr. McMillan owned a 9mm Ruger firearm through information from another informant, Fidel Garner. See Williams Rec. vol. 18 at 62. The telephone number of the crack house that Mr. McMillan allegedly supplied was also authenticated. Rec. vol. 3, doc. 000768, vol. 11 at 13, 34. Finally, the agents had verified other information concerning the Trips organization through surveillance. See Williams Rec. vol. 11 at 81, 83-84.

Despite Mr. McMillan's contentions, the trial court determined that Mr. Thomas was a reliable informant. Corroboration of the supplied information overcomes any difficulties with Mr. Thomas's information. As the district court noted, "the information that [Mr. Thomas] had given on prior occasions was certainly corroborated and, indeed,

8

much of it was on tape, both videotape and audio tape." Rec. vol. 12 at 70. Based on the testimony provided by the agents and Mr. Thomas, the trial court's determination that Mr. Thomas was reliable is not clearly erroneous. See generally Illinois v. Gates, 462 U.S. 213, 230-32 (1983).

2. Probable cause to perform a warrantless search.

On the evening of July 7 and the morning of July 8, 1994, the record indicates that the government agents had been monitoring Mr. McMillan's conversation with their informant, Trips member Mr. Thomas. See Rec. vol. 2 at 06431-32; Williams Rec. vol. 16 at 190. The agents had given Mr. Thomas $150.00 to repay Mr. McMillan for an outstanding debt from a drug transaction. See Rec. vol. 11 at 33. The agents recorded the counting of money and a discussion about crack cocaine between Mr. Thomas and Mr. McMillan. See id., vol. 2 at 06431-32.

After this conversation, Mr. Thomas informed the agents that he had witnessed a third Trips member, Lawrence Williams, hand Mr. McMillan several ounces of crack cocaine in small twist-tie bags. See id., vol. 11 at 41. Mr. Thomas stated that he saw Mr. McMillan put the contraband in the rear of Mr. McMillan's vehicle. See id. at 42. The agents, who were surveilling the exterior of the building, had seen Mr. McMillan enter his car for "less than a minute," although they were unable to see what, if anything, Mr. McMillan was carrying. Williams Rec. vol 16. at 195.

9

The agents kept Mr. McMillan's vehicle under surveillance for all but fifteen minutes that evening until it came to a stop within walking distance of the crack house that Mr. Thomas had identified as Mr. McMillan's distribution site. See Rec. vol. 11 at 53. Given the corroboration of Mr. Thomas's previously supplied information, these circumstances are sufficient to establish probable cause for the government's search of Mr. McMillan's vehicle. See United States v. Arzaga, 9 F.3d 91, 94 (10th Cir. 1993) ("We have upheld the warrantless search of a vehicle where 'events preceding the search gave the officer probable cause to believe the [vehicle] contained illegal drugs.'") (quoting United States v. Rodriguez-Pando, 841 F.2d 1014, 1017 (10th Cir. 1988)); United States v. Corral, 970 F.2d 719, 727 (10th Cir. 1992) (informant testimony coupled with police corroboration and surveillance supported probable cause for issuance of search warrant).

It is well-established that where officers have probable cause to believe a vehicle contains contraband, a warrantless search of that vehicle does not violate the Fourth Amendment.[2] See Ornelas, 116 S. Ct. at 1660 ("[A] warrantless search of a car is valid if based on probable cause.") (citing California v. Acevedo, 500 U.S. 565, 569-70 (1991));

---

[2] The record indicates that the search may have also been a valid search incident to Mr. McMillan's arrest for providing false information to the investigating officers. See United States v. Robinson, 414 U.S. 218, 234 (1973). Because the government does not raise this alternative basis to justify the search on appeal, we have limited our inquiry into the search's validity as a warrantless search of an automobile based on probable cause. See Rec. vol. 4, doc. 45 at 2, 18-19).

<u>Arzaga</u>, 9 F.3d at 94. The warrantless search of an automobile based on probable cause is justified by the vehicle's inherent mobility and the diminished expectation of privacy that surrounds the vehicle. See <u>Arzaga</u>, 9 F.3d at 94 (citing <u>United States v. Chadwick</u>, 433 U.S. 1, 12 (1977)). Accordingly, the district court was correct in denying Mr. McMillan's motion to suppress.

*C. Conviction under § 924(c)(1)*

Mr. McMillan next argues there was insufficient evidence that he used or carried a firearm to support his conviction under 18 U.S.C. § 924(c)(1) violation under the pre-<u>Bailey</u> instructions given to the jury. See <u>Bailey v. United States</u>, 116 S. Ct. 501, 505 (1995). We review for plain error because Mr. Simpson did not object to the instruction at trial. <u>United States v. Spring</u>, 80 F.3d 1450, 1465 (10th Cir.), <u>cert. denied</u>, 117 S. Ct. 385 (1996).

Here, the indictment charged that Mr. McMillan "did willfully and unlawfully use and carry the following 'firearm' . . . during and in relation to a drug trafficking crime. . . ." Rec. vol. 1, doc. 1 at 9, doc. 2 at 9.[3] The district court instructed the jury that it had to find that Mr. McMillan "used <u>or</u> carried a firearm during and in relation to [his]

---

[3] Mr. McMillan was indicted for "using and carrying" a firearm. However, 18 U.S.C. § 924(c)(1) defines the crime in the disjunctive, as did the jury instruction. "[A] crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive." <u>United States v. Parrish</u>, 925 F.2d 1293, 1297 (10th Cir. 1991) (internal quotation marks omitted).

commission of [the crime possession with intent to distribute crack cocaine]." Rec. vol. 9, doc. 120 at 22 (emphasis supplied). The instruction continued:

> The government is not required to prove that [Mr. McMillan] actually fired the weapon or brandished or displayed it in order to prove "use," as that term is used in this instruction. The defendant need not have actual possession of either the firearm or drugs. It is enough if [Mr. McMillan] had ready access to the weapon. However you must be convinced beyond a reasonable doubt that the firearm played a role in or facilitated the commission of a drug offense, and [Mr. McMillan] intended the weapon to be available for use during the drug transaction. In other words, you must find that the firearm was an integral part of the drug offense charged, and its availability increased the likelihood that the criminal undertaking would succeed. For example, you may infer from the circumstances that the presence of the weapon emboldened the defendant, that it was readily accessible to protect defendant's possession of the drugs, or as a safeguard during an illegal drug transaction.

Id. at 22-23. At the time of Mr. McMillan's trial, the district court's instruction was an accurate statement of the law. See United States v. Conner, 972 F.2d 1172, 1173-74 (10th Cir. 1992).

The Supreme Court, in Bailey v. United States, explained that in order to convict under § 924(c)(1) there must be more than simply evidence that the firearm was readily accessible under the "use" prong of 18 U.S.C. § 924(c)(1); the evidence must show there was an active employment of the firearm, "a use that makes the firearm an operative factor in relation to the predicate offense." 116 S. Ct. at 505. Thus, the mere placement of a firearm for protection, or nearby concealment of a gun to be prepared for a confrontation is no longer within the scope of the use prong of § 924(c)(1). See id. at

12

508 (stating that "use" does not extend to situation "where an offender conceals a gun nearby to be at the ready for an imminent confrontation").

### 1. Plain Error Test

The Supreme Court has recently narrowed the plain error test. See Johnson v. United States, 117 S. Ct. 1544 (1997). Before we can correct an error that was not raised at trial there must be (1) an "error," (2) that is "plain," (3) that "affects substantial rights, and (4) that "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Id. at 1549 (quoting United States v. Olano, 507 U.S. 725, 732 (1993) (quoting United States v. Young, 470 U.S. 1, 15 (1985) (internal quotations omitted))).

### a. Was there an Error?

There is no doubt that the submission of the proffered instruction to the jury today would be error under Bailey, and thus the first prong of the plain error test is satisfied. "We have held that Bailey applies retroactively to cases on direct appeal on the date it was decided." United States v. Miller, 84 F.3d 1244, 1256 (10th Cir. 1996) (citing United States v. Wacker, 72 F.3d 1453 (10th Cir. 1995)); see Johnson, 117 S. Ct. at 1549.

13

b. Was the Error Plain?

Similarly, there is little doubt that the error is clear under current law, although, as in Johnson, "it was by no means clear at the time of trial." 117 S. Ct. at 1549. "[I]t is enough that the error be 'plain' at the time of appellate consideration." Id.

c. Did the Error Affect Substantial Rights?

The third element, that the error "affects substantial rights" may be more difficult to discern. The Johnson Court assumed without deciding that the failure to submit materiality to the jury in a perjury prosecution "affected substantial rights," i.e. was substantially harmful to the defendant's rights. Id. at 1550, see United States v. Holland, __ F.3d __, No. 96-1102, 1997 WL 364290, at *7 n.3 (10th Cir. July 2,1997).

We noted in Holland that Justice Scalia's concurrence in California v. Roy, 117 S. Ct. 337, 339-40 (1996) (per curiam), sheds light on the inquiry used to determine whether a plain error "affects substantial rights." 1997 WL 364290, at *7 n.3. Justice Scalia stated that "[t]he absence of a formal verdict on [each necessary element of the crime] can not be rendered harmless by the fact that, given the evidence, no reasonable jury would have found otherwise. To allow error to be cured in that fashion would dispense with trial by jury." Roy, 117 S. Ct. at 339 (Scalia, J., concurring). He continued: "The error . . . can be harmless only if the jury verdict on other points effectively embraces [this element] or if it is impossible, upon the evidence, to have found what the verdict *did*

14

find without finding this point as well." Id. (emphasis supplied) (citing Carella v. California, 491 U.S. 263, 271 (1989)).

The government argues that although the instruction in this case was defective under Bailey, there was sufficient evidence to support both a use and a carry conviction in the record. Rec. vol. 9, doc 124. at 3-5. The government further suggests that evidence in the record clearly and undisputedly demonstrated that Mr. McMillan "carried" a firearm, and the jury necessarily based its verdict on conduct that, after Bailey, is considered criminal.

The district court determined that the evidence in the record established "that Mr. McMillan had the firearm with him because of the drugs and because he was in the [crack cocaine distribution] business at the time." Williams Rec. vol. 27 at 12. Further, the court stated that

> the evidence clearly meets any definition of carry in relation to or in connection with a drug offense. And, therefore, there was ample evidence to support carry. . . . [T]his . . . is a general verdict form and there's no ground for a motion for acquittal because there's supporting evidence on carry. . . . [T]he verdict was, in my view, on the basis of carry.

Id. at 12-13.

In Holland, this court held that a trial court's § 924(c)(1) instruction, although incorrect under Bailey, does not require vacation of the conviction. See Holland, 1997 WL 364290, at *6. We noted that the demands are several to affirm a "carrying" conviction when dealing with a defective § 924(c) instruction:

15

The essential inquiry is whether the jury's verdict, under the instructions given and the nature of the evidence, required the jury to find all the elements of a 'carrying' violation, or stated another way, whether the verdict was the functional equivalent of such a finding. We must be convinced that it was impossible upon the evidence and instructions for the jury to have returned a 'use' conviction without finding all the elements of a 'carrying' violation as well.

Id. at *7 n. 4; see Roy, 117 S. Ct. at 340 (Scalia, J., concurring). Thus, the fact that the

evidence was sufficient to support a conviction on a legally valid ground does not

eliminate the possibility that the defendant could have been convicted solely on a legally

invalid ground or the resulting prejudice unless, in convicting the defendant, "the jury

necessarily made the findings required to support a conviction on the valid ground."

Holland, 1997 WL 364290, at *5.

In Holland, the trial court's "use" instruction, incorrect post-Bailey, incorporated

certain elements that overlap with the "carry" prong: "Use is established when the

defendant has ready access to the firearm and the firearm was an integral part of his

criminal undertaking . . . . [T]o find use, you must find that the defendant actually and

knowingly possessed the firearm as possession is defined elsewhere in these instructions."

Id. at *3.

The Holland trial court's "carry" instruction was proper, delineating the elements

of the defendant's transportation and possession of a firearm, during or in relation to a

drug trafficking offense. See id. at *3 and n.2. The trial court in Holland also instructed

the jury on possession, both actual and constructive, either of which the jury must have

16

found to convict under either the "use" or "carry" prong of § 924(c). See id. at *5. We concluded that the jury necessarily found the facts that the firearm was located under the front passenger seat of a car owned and driven by the defendant "as predicates for its finding of possession, a finding that was a requisite part of the 'use' conviction under the court's instruction." Id. The court went on to determine that the jury similarly necessarily made findings as to each necessary element of the carry prong, made under proper instructions, and supported by sufficient evidence. See id. at *6.

In Holland, the unusual overlap of jury instructions, jury findings, and supporting evidence enabled us to supply the elements of "carry" under § 924(c)(1). We are unable to do the same in this case, however, and thus cannot affirm on the same basis.

Here, the district court instructed jury that Mr. McMillan "used or carried" a firearm, without distinguishing between the two prongs. Rec. vol. 9, doc 20 at 22. Thus under the issued instruction, the jury could have concluded that "use" and "carry" were synonymous. See United States v. Simpson, 94 F.3d 1373, 1379 (10th Cir.) (where instruction did not separately define "use" and "carry" prong, "the jury could have erroneously decided that the terms . . . were redundant"), cert. denied, 117 S. Ct. 411 (1996).

Thus, unlike the instructions in Holland, here we have an improper "use" instruction, no valid "carry" instruction, and few jury findings from which we can garner "necessary" and "inherent" conclusions. See Holland, 1997 WL 364290, at *7 n.4. The

17

instruction here alludes to the element of possession, but suggests it need not be found, stating "[t]he defendant need not have actual possession of either the firearm or drugs." Rec. vol. 9, doc. 120 at 22. The instruction makes no mention of the element of transportation. Finally, here, unlike the defendant in Holland, Mr. McMillan disputes whether the firearm was carried on his person or within his reach available for immediate use. See Aplt's Supp. Br. at 34, Rec. vol. 27 at 10-12; see Holland, 1997 WL 364290, at *7 n.4.

That the facts make the presence of the elements of transportation and possession appear obvious does not translate into the functional equivalent of a finding by the jury that Mr. McMillan carried the weapon. There is no evidence in the record that Mr. McMillan placed the firearm in the vehicle. Mr. McMillan disputes the evidence of "carry" in the record on appeal. We conclude that it was not "'impossible'. . . for the jury to have returned a 'use' conviction" under the defective "use" instruction "without finding all the elements of a 'carrying' violation as well." Holland, 1997 WL 364290 at *7 n.4; Roy, 117 S. Ct. at 339-40 (this type of error "can be harmless only if the jury verdict on other points effectively embraces [this element] or if it is impossible . . to have found what the verdict did find without finding this point as well") (Scalia, J., concurring) (emphasis supplied).

18

d. Did the Error Seriously Affect the Fairness, Integrity, or Public

Reputation of Judicial Proceedings?

In <u>Johnson</u>, the Court noted that if the evidence supporting the forfeited error, was "overwhelming" and "essentially uncontroverted" at trial, 117 S. Ct. at 1550, the error would not satisfy the final prong of <u>Olano</u>, that is, one that "seriously affected the fairness, integrity, or public reputation of judicial proceedings." 507 U.S. at 736. As established in our evaluation of the prejudice prong above, the jury findings and the evidence in the record do not necessarily include the elements of "carry." Mr. McMillan's arguments before the district court and on appeal further highlight the lack of "overwhelming" evidence that he "carried" the weapon. Thus, the lack of an actual jury verdict on "carry" is an error that "seriously affects the fairness, integrity, and public reputation of judical proceedings." <u>Olano</u>, 507 U.S. at 736. <u>See</u> <u>also</u> <u>Roy</u>, 117 S. Ct. at 339 ("The absence of a formal verdict on this point can not be rendered harmless by the fact that, given the evidence, no reasonable jury would have found otherwise.") (Scalia, J., concurring). Accordingly, Mr McMillan has satisfied the four prongs of the plain error test.


<u>2. Remand</u>

This conclusion does not suggest that there is not *sufficient* evidence on which to retry Mr. McMillan, however. We turn now to the question of whether we must order a

19

new trial. "[W]e will remand for a new trial only if the jury could have returned a guilty verdict if properly instructed." Miller, 84 F.3d at 1258. We must determine if there is sufficient evidence in the record to support a finding that Mr. McMillan used or carried a firearm under a proper jury instruction.

We conclude that there is insufficient evidence in the record before us that Mr. McMillan "used" a firearm under Bailey. Although there is evidence that Mr. McMillan regularly had the firearm in his possession during drug transactions, "[t]hat [Mr. McMillan] generally carried guns does not satisfy the active employment requirement of Bailey." United States v. Richardson, 86 F.3d 1537, 1548 (10th Cir. 1996). The government has presented little credible evidence that Mr. McMillan brandished, displayed, bartered, referred to, or in any other way actively employed the firearm with respect to the drug offense for which he was indicted. The testimony that Mr. McMillan displayed his gun to government informant Fidel Garner during a separate drug transaction similarly does not qualify as active employment use during the July 8, 1994 drug transaction. This evidence in the record is legally insufficient to support a finding that Mr. McMillan "used" the weapon under § 924(c)(1) in furtherance of the drug transaction for which Mr. McMillan was charged and convicted.

However, we believe there is evidence to support a finding that Mr. McMillan "carried" a firearm under § 924(c)(1). Both before and after Bailey, to support a finding that Mr. McMillan carried the firearm, the government must prove "that [Mr. McMillan]

20

transported a firearm in a vehicle and that he had actual or constructive possession of the firearm while doing do." Simpson, 94 F.3d at 1379 (quoting Miller, 84 F.3d at 1259). In addition, the government must also prove that Mr. McMillan "possessed and transported the firearm, [and availed himself of it] during and in relation to a drug trafficking offense." Id. (citing Richardson, 86 F.3d at 1548).

In this case, the gun was found in the driver's seat area of the car, and approximately 120 grams of crack cocaine, in several plastic twist-tie bags, divided into street distribution sizes, were discovered in a rear armrest panel of the vehicle. See Rec. vol. 11 at 56; vol. 1, doc. 7, att. 1 at 2. Although the record does not indicate that Mr. McMillan carried the firearm to the vehicle, this evidence indicates that Mr. McMillan "transported the firearm, and it was accessible to him in such a way that he had dominion and control over it." Simpson, 94 F.3d at 1380 (making finding of dominion when firearm found under driver's seat).

From this evidence of proximity of the firearm and drugs, a jury reasonably could have concluded that Mr. McMillan carried the weapon with an intent that the weapon be available for use during the drug trafficking offense with which he was charged. See Simpson, 94 F.3d at 1380. Therefore, there is considerable evidence that Mr. McMillan possessed and transported the firearm: it was readily accessible, Mr. McMillan availed himself of it, and it played an integral role during the drug transaction. See id. (remanding "[b]ecause there was some evidence of carrying"). Therfore, we must

remand for a new trial on the issue of whether Mr. McMillan carried the firearm for purposes of § 924(c)(1).

*D. Sentencing Guidelines*

Mr. McMillan also challenges his sentence under 21 U.S.C. § 841(b)(1)(A)(iii), claiming that the sentence for the crack cocaine offense is unconstitutional. He asserts that the statutory distinction drawn between the penalties for possession and distribution of crack and powder cocaine violates Fifth Amendment due process guarantees because the two substances are chemically identical. Mr. McMillan relies on the 1994 Annual Report of the United States Sentencing Commission. "In May 1995, the Sentencing Commission proposed amendments to the sentencing guidelines that would eliminate the penalty differential between crack and powder cocaine." See United States v. Fonts, 95 F.3d 372, 374 (5th Cir. 1996) (per curiam) (citing United States Sentencing Commission, Amendments to the Sentencing Guidelines, 60 Fed. Reg. 25074, 25075-76 (1995)). The amendments would have become effective on November 1, 1995, absent action by Congress. Congress responded, however, and rejected the amendments' attempt to erase the disparity in sentencing. See id. at 374; Pub. L. 104-38, 109 Stat. 334, § 1 (1995).

We cannot ignore Congressional action on this issue. Furthermore, this circuit and every circuit that has addressed the issue has upheld the constitutionality of 21 U.S.C. § 841(b)(1) and United States Sentencing Guideline § 2D1.1 against race-based equal

protection challenges. See United States v. Thurmond, 7 F.3d 947, 951 (10th Cir. 1993) (citing cases). Mr. McMillan's argument certainly fails, and borders on frivolity.

*E. Motion for Severance*

Mr. McMillan's fifth contention is that the district court erred in refusing to sever his trial from the trial of his codefendants. We normally review such a contention under the abuse of discretion standard, but Mr. McMillan did not even file a motion for severance before or during his trial. He therefore "has waived the issue unless he can show that actual prejudice resulted from the joint trial." United States v. Killip, 819 F.2d 1542, 1547 (10th Cir. 1987). In this case "[j]oinder [wa]s clearly proper under Fed. R. Crim. P. 8(b), because the [g]overnment alleged that Mr. [McMillan] had 'participated in the same . . . series of acts or transactions' as the other defendants." Id. (quoting Fed. R. Crim. P. 8(b)). Mr McMillan alleges he was prejudiced because the weight of the evidence against his codefendants was much greater than that against him. He contends that a spillover effect essentially tainted his rights to due process and a fair trial.

Mr. McMillan has not shown actual prejudice and is not entitled to a separate trial. In Zafiro v. United States, 506 U.S. 534, 539 (1993), the Supreme Court explained that actual prejudice might occur "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." See United States v. Emmons, 24

23

F.3d 1210, 1218-19 (varying degrees of culpability between defendants not evidence of actual prejudice) (quoting Zafiro, 506 U.S. at 539).

The evidence in the record revealed that Mr. McMillan was involved in drug transactions with Lawrence Williams and other co-defendants. Because of the nature of the conspiracy charges and Mr. McMillan's involvement in the Trips organization, the evidence against Mr. McMillan necessarily overlapped with evidence against his codefendants. Finally, the fact that the jury was unable to reach a conclusion as to the conspiracy count against Mr. McMillan shows that the jury actually weighed the evidence as to each defendant, further suggesting that Mr. McMillan's rights were not compromised.

### F. Double Jeopardy Claim

Finally, Mr. McMillan appeals the district court's rejection of his claim that the forfeiture of his property to the government, as proceeds of illegal drug transactions, before his sentencing in the criminal proceeding, violated the Double Jeopardy clause. Mr. McMillan's counsel has filed an Anders brief and motion to withdraw as to this issue, stating that in his opinion no meritorious issue exists on appeal. See Anders v. California, 386 U.S. 738, 744 (1967). Under Anders, counsel must file a brief "referring to all matters in the record that might reasonably support an appeal." United States v. Mihaly, 67 F.3d 894, 895 (10th Cir. 1995) (citing Anders, 386 U.S. at 744).

24

Under the Supreme Court's recent holding in <u>United States v. Ursery</u>, 116 S. Ct. 2135, 2148-49 (1996), civil actions seeking forfeiture of items used in or derived from drug transactions that are the basis of the prosecution are not punitive, but rather remedial in nature. Such forfeitures therefore do not implicate the Double Jeopardy clause. We grant Mr. McMillan's counsel's motion to withdraw from the presentation of this claim. The district court's denial of Mr. McMillan's motion was correct.

### III. Conclusion

For the reasons stated, Mr. McMillan's conviction for using or carrying a firearm in relation to a drug-trafficking offense under 18 U.S.C. § 924(c)(1) is reversed, his sentence for that offense is vacated, and the case is remanded for a new trial on that offense. His conviction and sentence are affirmed in other respects.

Entered for the Court,

Robert H. Henry
Circuit Judge

25