**UNITED STATES of America, Plaintiff,**

v.

**Paul Edward DAVIS, Defendant.**

No. 99–40091–01–DES.

United States District Court,
D. Kansas,
Topeka Division.

April 21, 2000.

David J. Phillips, Melody J. Evans, Office of Federal Public Defender, Topeka, KS, for Paul Edward Davis, defendant.

Paul Edward Davis, Topeka, KS, Pro se.

Randy M. Hendershot, Office of United States Attorney, Topeka, KS, for U.S.

### MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on defendant's Motion for Discovery Regarding Selective Prosecution (Doc. 23). The defendant has sought a large amount of information from the Department of Justice, the FBI, and HUD in order to assist in the preparation of a motion to dismiss the indictment based upon selective prosecution based on race. The government has opposed this motion. The court held a hearing on this motion on March 20, 2000. Following the hearing, the court took this matter under advisement and allowed the parties to file supplemental briefs on the matter. The court has reviewed the supplemental briefs and is now ready to rule.

## I. STANDARD FOR GRANTING A MOTION FOR DISCOVERY REGARDING SELECTIVE PROSECUTION

■ The Supreme Court has held that discovery on this type of motion should not be granted unless the defendant can make "a credible showing of different treatment of similarly situated persons." *United States v. Armstrong*, 517 U.S. 456, 470, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996). The Supreme Court has recognized that allowing discovery on selective prosecution claims should be allowed only after a sufficient showing of evidence. "If discovery is ordered, the Government must assemble from its own files documents which might corroborate or refute the defendant's claim. Discovery thus imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution. It will divert prosecutors' resources and may disclose the Government's prosecutorial strategy." *Id.* at 468, 116 S.Ct. 1480.

## II. ANALYSIS

As stated above, the defendant must make a credible showing that similarly situated persons are being treated differently. The defendant essentially makes two challenges to the government's prosecution of the defendant. First, the defendant claims that the government investigators aggressively solicit crack cocaine distribution targeting African–American offenders. Second, the defendant claims that government improperly decides to indict African–American offenders in federal court, rather than state court, based on their race. The government claims that the race of the defendant had no influence either in the investigation phase or prosecution phase of this case.

### A. Challenge Regarding the Investigation Phase

The defendant makes two points concerning the investigation of this case which he claims shows the investigating officers focus their attention and resources on African–American offenders. First, the defendant claims that the government spends considerably more time and resources investigating crack cocaine offenses, which primarily result in the arrests of African–Americans, than it does investigating methamphetamine offenses, which primarily result in the arrests of Caucasians. Second, the defendant argues that the investigators are targeting African–American defendants in their crack cocaine investigations and not Caucasians.

■ As an initial matter, the court questions whether individuals who are involved in crack cocaine offenses and individuals who are involved in methamphetamine offenses are "similarly situated" as is required under *Armstrong*. Although it is true that both crimes are prosecuted under the same federal statute, the crimes are not the same. This is made obvious by the fact that the sentences for each of these crimes can vary greatly depending for the same amount of drug involved. The argument that all defendants charged under 21 U.S.C § 841 are similarly situated for purposes of prosecution stretches the concept of "similarly situated" to its breaking point, if not beyond. However, the court will assume that defendants

charged with methamphetamine offenses and crack cocaine offenses are "similarly situated" for the purposes of this motion. Even with this assumption, the court finds that this argument lacks merit. The defendant claims "The federal methamphetamine cases in Exhibit 410 are not the result of such aggressive solicitation of crimes as employed in Washburn[1] when African–American's were targeted. Instead, the methamphetamine cases arise from traffic stops, search warrants or other brief and relatively uncomplicated law enforcement investigations." As pointed out by the government, they are aggressively targeting methamphetamine offenders in Kansas. The United States Attorneys office in Topeka, Kansas, currently has a Special Assistant United States Attorney whose sole job duty is to prosecute methamphetamine cases. In addition, the government has just completed a lengthy investigation of methamphetamine offenders in Kansas and five surrounding states which produced approximately thirty arrests, all of which involved Caucasians. This latest investigation involved a much higher degree of law enforcement investigation than claimed by the defendant in his motion.

The defendant bases his argument on the fact that the government had never used the type of sting operation which ensnared the defendant. In this investigation, the investigators rented a house and had it wired for both sound and video. The informant at that point called numerous individuals and set up drug transactions to take place at the house. Although the court acknowledges that this type of sting operation has apparently never been used to target methamphetamine offenders in Topeka, the court would also note that this type of sting operation has apparently never been used to target any type of drug offenders in Topeka before this case. The fact that the investigators used this technology for the first time in this investigation does not mean that they are treating any group differently than any other.

The second argument the defendant raises concerning the investigative stage of this case is that investigators are targeting African–American crack cocaine offenders and not Caucasian crack cocaine offenders. The defendant claims that crack cocaine offenses are committed by both Caucasians and African–Americans and that the government is apparently targeting the crimes committed by African–Americans. In support of this claim, the defendant has relied upon statistics showing that the vast majority of crack cocaine defendants are African–American and testimony by a drug counselor stating that the amount of Caucasians and African–Americans who voluntarily commit themselves for drug treatment relating to crack cocaine addiction is nearly equal. In essence, the defendant's argument is that nearly all crack cocaine defendants are African–American, even though Caucasians and African–American's use crack cocaine equally.

The court finds that the defendant has not met his burden in connection with this argument. As an initial note, the testimony of the witness appeared to be in the form of an educated guess as to the racial breakdown of those individuals seeking treatment. The testimony was not supported by any reports or documentation which could have verified the witnesses testimony. Also, the defendant relied solely on the testimony of one drug counselor, concerning the patients in one drug program, to establish the statistical breakdown of the entire city of Topeka. It is difficult for the court to base a finding that similarly situated individuals are being treated differently based upon such a small sampling of the population. In addition, the defendant failed to show how the testimony concerning the equal number of African–American and Caucasian patients who enter into drug treatment bears on the issue of who is using crack cocaine on the streets. There was no testimony about any statistics

---

1. The house used by police in this investigation is located very near to Washburn University. Throughout the hearing and in the briefs on this motion, the defendant has referred to this investigation as the "Washburn" investigation in order to clarify what arrests were made under the same circumstances as the defendant's. The government has referred to this investigation as Operation Candid Camera.

concerning actual crack cocaine usage. Instead, the evidence concerned individuals who voluntarily commit themselves to drug treatment. Without some evidence showing that the percentages of African–Americans and Caucasians who abuse crack cocaine is directly related to the percentages of African–Americans and Caucasians who voluntary submit to treatment, the court finds that this evidence is insufficient to establish the requirements for discovery regarding selective prosecution.

### B. Challenge Regarding the Prosecution Phase

■ The defendant also challenges the decision to prosecute African–Americans in federal court, as opposed to state court, for the crack cocaine charges. Once again, the defendant compares the prosecution of crack cocaine offenses to those of methamphetamine offenses to try and show that similarly situated individuals are being treated differently. The defendant is not claiming that all crack cocaine offenses are tried in federal court and that all methamphetamine cases are tried in state court, or that all African–American defendants are tried in federal court and that all Caucasian defendants are tried in state court.

The government has argued that many factors go into the decision of whether to refer a case to state court for prosecution. These factors, according to the government, include whether a weapon was involved, the amount of drug involved, the defendant's prior criminal record, and other intelligence reports on an individual concerning his involvement in crime. The government claims that these factors determine whether a case will be pursued federally and that race plays no part in the decision.

The defendant claims that the government appears to be referring to a high number of methamphetamine cases involving over 5 grams of methamphetamine, which generally involve Caucasian defendants, to state court for prosecution while prosecuting the vast majority of crack cocaine cases involving over 5 grams of cocaine, which generally involve African–American defendants, in federal court where the sentences are often much higher. The court finds that the defendant's argument is flawed for two reasons. First, although both methamphetamine crimes and crack cocaine crimes are charged under the same federal statute, the sentences vary greatly. With all other factors being even, a defendant who is convicted of possessing 5 grams of crack cocaine will generally receive a much higher sentence than a defendant convicted of possessing 5 grams of methamphetamine.

Second, the defendant has produced numerous cases which were prosecuted in state court where the defendant was charged with possessing over 5 grams of methamphetamine. However, unlike in the federal courts, the state court does not differentiate between "actual methamphetamine" and "a mixture or substance" containing methamphetamine. Under the federal sentencing guidelines, a defendant must possess a much greater quantity of a mixture or substance containing methamphetamine to receive the same sentence as a defendant who possesses actual methamphetamine. The evidence presented by the defendant does not address the issue of whether the cases referred to state court contained actual methamphetamine or a mixture or substance containing methamphetamine. Therefore, the court finds that the defendant has failed to show that similarly situated individuals are being treated differently.

### C. Other Arguments Raised by the Defendant

The court has attempted to address each of the major points raised by the defendant in connection with this motion. Other points and arguments were mentioned by the defendant and were considered in coming to a conclusion in this matter, whether all of those points were specifically addressed by the court or not.

### IV. CONCLUSION

The court finds that the defendant has not shown that similarly situated people are be-

ing treated differently in connection with the investigation and prosecution of crack cocaine offenses, for the reasons set forth above. This basic showing is required before the court will order discovery regarding selective prosecution. Therefore, the Motion for Discovery Regarding Selective Prosecution will be denied.

**IT IS THEREFORE BY THIS COURT ORDERED** that the defendant's Motion for Discovery Regarding Selective Prosecution (Doc. 23) is denied.