**UNITED STATES of America, Plaintiff,**

v.

**Samuel Juan GREEN, Defendant.**

**United States of America, Plaintiff,**

v.

**Michael Duane Grant, Defendant.**

**United States of America, Plaintiff,**

v.

**Michael E. Porter, Defendant.**

**Nos. 00–40018–01–RDR, 00–40012–01–RDR, 99–40096–01–RDR.**

*United States District Court, D. Kansas.*

June 6, 2000.

David J. Phillips, Melody J. Evans, Marilyn M. Trubey, Ronald E. Wurtz, Office of Federal Public Defender, Topeka, KS, for defendants.

Samuel Juan Green, Topeka, KS, pro se.

Randy M. Hendershot, Gregory G. Hough, Anthony W. Mattivi, Office of United States Attorney, Topeka, KS, for U.S.

Michael Duane Grant, Topeka, KS, pro se.

Michael Porter, Topeka, KS, pro se.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

This order is issued to resolve a motion for discovery relating to selective prosecution which is pending in the above-captioned cases. These cases were consolidated for the purpose of presenting arguments and evidence on the motion. Some of the evidence before the court is a transcript of testimony presented before Judge Saffels in the case of *United States v. Thomas C. James,* Case No. 00–40007–01. Like the *James* case, these cases arise from an investigation sometimes called "Operation Candid Camera" in which an informant working for the Topeka Police Department lured persons he contacted to a house where drug transactions could be recorded on video tape. The informant was African–American. All of the defendants arrested in the operation in connection with alleged drug activity at a house at 1722 S.W. Washburn in Topeka, Kansas are African–American. The Department of Housing and Urban Development, the FBI and the DEA also participated with money or manpower in the operation.

Although a broadly stated discovery request is the ultimate purpose of the motion, defendants' counsel have asked the court to focus first on whether the threshold showing for any discovery on selective prosecution has been satisfied. Defendants' counsel have indicated that the scope and type of discovery can be considered at a later time if the court finds that the threshold showing has been made. We shall use that approach.

Both sides agree that *United States v. Armstrong,* 517 U.S. 456, 116 S.Ct. 1480, 134 L.Ed.2d 687 (1996) provides controlling guidance to the court on this issue. Nevertheless, there is disagreement over whether *Armstrong* requires only a "credible showing of different treatment of similarly situated persons" (517 U.S. at 470, 116 S.Ct. 1480) or whether, in addition, there must be some showing of intent or animus.

We believe *Armstrong* requires some threshold showing of discriminatory effect and purpose. In the opinion, the Court reviewed the requirements to prove a selective prosecution claim and stated that to establish such a claim, "The claimant must demonstrate that the federal prosecutorial policy 'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" 517 U.S. at 465, 116 S.Ct. 1480 (quoting *Wayte v. United States,* 470 U.S. 598, 608, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985)). Then the Court repeated and, we believe, adopted the holding of Courts of Appeals which have considered the issue and "'require [for discovery] some evidence tending to show the existence of the essential elements of the defense,' discriminatory effect and discriminatory intent." 517 U.S. at 468, 116 S.Ct. 1480 (quoting *United States v. Berrios,* 501 F.2d 1207, 1211 (2nd Cir.1974)). Thereafter, the Court found that the evidence was insufficient to constitute "'some evidence tending to show the existence' of the discriminatory effect element." 517 U.S. at 469, 116 S.Ct. 1480 (quoting *Berrios, supra*). Having made this finding, the Court did not need to make a specific finding regarding proof of discriminatory intent. The Court simply concluded that the proof "did not constitute 'some evidence tending to show the existence of the essential *elements* of' a selective prosecution claim." 517 U.S. at 470, 116 S.Ct. 1480 (quoting *Berrios, supra*) (emphasis added). It is significant to us that the Court used the plural "elements," indicating that there must be some evidence of both discriminatory effect and intent.

Other courts have similarly construed *Armstrong*. See *U.S. v. Jones,* 159 F.3d 969, 978 (6th Cir.1998); *U.S. v. Olvis,* 97 F.3d 739, 743 (4th Cir.1996); *United States*

*v. McMillan,* 120 F.3d 271, 1997 WL 413252 (10th Cir.1997) (table); *United States v. Reese,* 119 F.3d 8, 1997 WL 412540 (9th Cir.1997) (table). Defendants assert that the Ninth Circuit held otherwise in *U.S. v. Turner,* 104 F.3d 1180 (9th Cir.) *cert. denied,* 520 U.S. 1203, 117 S.Ct. 1566, 137 L.Ed.2d 712 (1997). We disagree with that interpretation. We believe *Turner* followed the *Armstrong* approach and determined that there was an insufficient showing of discriminatory effect and did not need to expressly consider the issue of intent.

This issue is important to the extent that defendants appear to concede that they have made no showing whatsoever of discriminatory intent and, moreover, do not seem to contend there is discriminatory intent as opposed to a more subtle "institutional" problem. Indeed, the record only contains testimony directly denying any discriminatory intent. However, we recognize, of course, that direct evidence of discriminatory intent is rare.

We also acknowledge that one may argue that "a credible showing of different treatment of similarly situated persons" constitutes proof of *both* discriminatory effect and intent. See *U.S. v. Tuitt,* 68 F.Supp.2d 4, 15 (D.Mass.1999) (arguing that inquiry into intent and effect is conflated under *Armstrong, Turner* and *Olvis*). However, even under this approach we find that the evidence before the court falls short of what is necessary to order discovery.

■ Defendants have shown that the great majority (92%) of crack cocaine distribution defendants represented by the Federal Public Defender's Office in Topeka, Kansas since 1998 are African–American. Defendants have shown that a similar disparity exists nationwide. Defendants have further shown that: Caucasians in the Topeka area use crack cocaine; they seek treatment for addiction; and in one treatment program in Topeka, approximately one-half of all crack addicts are non-African-American,

with 35% being Caucasian. In addition, defendants have shown that all defendants represented by the Federal Public Defender's Office in Topeka, Kansas since 1998 and facing methamphetamine distribution charges are non-African-American. Finally, three Caucasian defendants facing cocaine distribution charges involving more than five grams have been charged in state court instead of federal court. It is unknown whether these defendants were allegedly involved with crack or powder cocaine. Of course, the general population of the Topeka area is predominately Caucasian.

The government has presented testimony from persons involved in Operation Candid Camera. These persons flatly deny that racial discrimination played any part in the investigation and prosecution of these defendants and others who were arrested. The government has also presented testimony indicating that criminal history, criminal intelligence, drug quantity, and connection to federal operations are factors which play a part in the decision of whether persons may be charged federally or in state court in cases like the cases at bar. In addition, the government has made reference without contradiction to the significant resources devoted to prosecuting methamphetamine cases in the last few years.

Without further detailing the evidence, we note that Judge Saffels denied the motion for discovery based on similar evidence in *U.S. v. Davis,* 2000 WL 554170 (D.Kan.4/21/00). We shall not reiterate his analysis, but we shall rely upon it by reference in ruling in these cases.

We add the following observations. Defendants allege different treatment of similarly situated defendants in the following ways: more methamphetamine defendants (who tend to be Caucasian) charged with more than five grams are prosecuted in state courts where the penalties are less severe than crack cocaine defendants (who tend to be African–American); local meth-

amphetamine investigations have not used an informant to lure persons into a house which has been set up to record drug transactions, but at least one local crack cocaine investigation has; and local crack cocaine investigations have not resulted in arrests of many Caucasian crack cocaine users and sellers, even though there are Caucasian crack cocaine users and sellers in the Topeka area.

At the same time, defendants cannot dispute that if crack cocaine defendants and methamphetamine defendants are similarly situated, as is argued in the instant motion, African–American and non-African-American defendants are being prosecuted in "similar" cases in substantial numbers in federal court in Topeka, Kansas. It is also clear that methamphetamine crimes and crack cocaine crimes are aggressively targeted by investigative and prosecutorial agencies, if not in *identical* kinds of investigations. It is also clear that some Caucasian crack cocaine defendants have been prosecuted in federal court in Topeka, Kansas (e.g., *U.S. v. Steven and Donna Forsythe*, Case No. 95–40060–01/02), and some African–American crack cocaine defendants have been prosecuted in state court, rather than federal court. Numerous factors play a role in determining whether a case is prosecuted in state or federal court, including: drug quantity, criminal history, criminal intelligence (i.e., information other than arrests and convictions), case load, and connection to federal operations (such as public housing). Differences in how mixtures containing methamphetamine are penalized under state and federal law may also play a part in determining the forum of prosecution. It is difficult to find a convincing correlation between race and prosecution when there are so many Caucasian methamphetamine defendants in federal court, and there has been evidence of only three Caucasian cocaine distribution defendants charged in state court with distributing more than five grams of crack or powder. We acknowledge the evidence of Caucasian crack cocaine addiction, but similar evidence was not persuasive in *Armstrong*, where Justice Stevens noted that 65% of persons using crack are white (517 U.S. at 479, 116 S.Ct. 1480), and there was an affidavit citing, albeit through hearsay, that there were an equal number of Caucasian users and dealers to minority users and dealers.

In light of all of this information, the court does not believe defendants have demonstrated a credible showing of different treatment based on race of similarly situated persons.

Therefore, for the above-stated reasons, defendants' motions for discovery relating to selective prosecution shall be denied.

**IT IS SO ORDERED.**