**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**Filed 8/19/96**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

      No. 95-3048

MARLIN A. SIMPSON,

      Defendant-Appellant.

**Appeal from the United States District Court
for the D. Kan.
(D.C. No. 94-10008-01)**

**Submitted on the Briefs:**[*]

Randall K. Rathbun, United States Attorney, David M. Lind, Assistant United States Attorney, Office of the United States Attorney, Wichita, Kansas, for Plaintiff-Appellee.

Michael Gordon Katz, Federal Public Defender, James P. Moran, Assistant Federal Public Defender, Office of the Federal Public Defender, Denver, Colorado, for Defendant-Appellant.

Before **BALDOCK, BRORBY** and **EBEL**, Circuit Judges.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.

**EBEL**, Circuit Judge.

After the jury was unable to reach a verdict in his first trial, Marlin Simpson was convicted on retrial of possession with intent to distribute crack cocaine and of using or carrying a firearm during and in relation to a drug trafficking offense. Simpson appeals, claiming: (1) because there was no manifest necessity for the first mistrial, his retrial was barred by the Double Jeopardy Clause; and (2) the evidence was insufficient to support his conviction on either count. Simpson also challenges the use of a prior battery conviction in his sentencing calculation on the ground that the government failed to provide sufficient evidence of the validity of that conviction.

## I.

Officers of the Wichita Police Department, acting on information from a confidential informant, obtained a search warrant for a residence located at 2350 North Erie in Wichita. The residence was listed in the city directory as belonging to Marlin Simpson and his grandmother, Hazel Simpson.

Prior to executing the warrant, officers surveyed the residence and observed various people arrive, stay inside for one to five minutes, and then leave. Officers then observed Simpson exit the residence and climb into the passenger side of a Chevy Nova. The stream of visitors at the residence ceased when

Simpson left. As Simpson left the residence, he was carrying a handgun, which he appeared to place under the passenger side front seat. When officers stopped Simpson a short distance away, he was riding in a second Chevy Nova being towed by the first Chevy Nova that he had been observed entering. A loaded Glock 9mm handgun was under the front seat of the vehicle in which Simpson was riding, and he had a pager on his person. No drugs were found in the car or on Simpson's person.

When the warrant was executed at 2350 North Erie, a detective searched the room that Simpson's grandmother identified as Simpson's bedroom. The detective found: crack cocaine, including eight one-ounce bags of crack in a Redskins jacket in the closet; scales, baking soda, which is often used to cook cocaine into crack, and other drug paraphernalia; $480 in cash; and ammunition. The detective also discovered photographs of Simpson and Simpson's girlfriend, and mail addressed to Simpson at that address. After searching the house, police searched five people they found inside. Simpson's uncle, Ronald Simpson, was found with approximately 26 grams of crack cocaine on his person.

Simpson was charged in a superseding indictment with conspiring with Ronald Simpson to distribute crack cocaine in violation of 21 U.S.C. § 846, possessing with intent to distribute crack cocaine in violation of 21 U.S.C. § 841(a)(1), and using or carrying a firearm during and in relation to a drug

trafficking offense in violation of 18 U.S.C. § 924(c)(1). The conspiracy charge subsequently was dismissed. Simpson's first trial ended in a mistrial after the judge determined that the jury could not reach a verdict. At Simpson's second trial, the defense offered evidence that for six months preceding the execution of the search warrant Simpson had not been living at the North Erie address but had been living elsewhere with a cousin. Simpson claimed he had used the North Erie address only as a mailing address. The jury convicted Simpson of both counts, and Simpson appeals.

**II.**

Simpson first claims that his retrial subjected him to double jeopardy. When a mistrial is declared without the defendant's consent, the Double Jeopardy Clause of the Fifth Amendment bars the retrial of the defendant unless there was "manifest necessity" for the mistrial. Arizona v. Washington, 434 U.S. 497, 505 (1978). A finding of manifest necessity is within the sound discretion of the trial court. United States v. Crotwell, 896 F.2d 437, 440 (10th Cir. 1990).

The events leading up to Simpson's mistrial were as follows: Simpson's trial began on the morning of September 13, 1994, and the case was submitted to the jury at 11:30 a.m. on September 14. Between 4:45 and 5:00 p.m on

September 14, the jury sent two questions to the trial judge, who responded in open court. The following portions of his response are relevant:

> I will take your second question first: "Can we have a verdict on one count and not on the second?" Yes, you can have a verdict, as the instructions told you. . . .
> The second question where you said, "We are hung up. What do we do from this point?". . .
> I think I'll excuse you for the evening and ask you to come back and continue your deliberations[,] . . . and then if you cannot arrive at a verdict on all of the counts or on one of the counts--I take it your question was on one count and not on two counts. I don't know what, but you can come in with a verdict on the one count of the indictment. I commend you to look at Instruction 26 [the elements of the 924(c) charge] in connection with your coming in with a verdict. Remember that in order to sustain his [sic] burden of proof for a charge of using or carrying a firearm during and in relation to a drug trafficking crime as charged in Count 2 in the indictment, the government must prove the following two essential elements beyond a reasonable doubt: First, that . . . the defendant committed or aided and abetted in the commission of a drug trafficking crime charged in Count 1 of the indictment. So, <u>in order to-- in coming in with a verdict, you could not come in with a verdict on Count 2 alone. Your verdict would have to be on Count 1, and then if you think that the use of the weapon was in connection with that, then you can find a verdict on Count 2.</u>

(emphasis added). Before excusing the jury, the judge asked counsel if they had any objections to his remarks, and both counsel replied that they did not.

The jury resumed deliberations at 9:00 a.m. the next morning. At 10:35, in response to further communication from the foreman indicating that the jury still was having difficulty reaching a verdict, the judge summoned the jury into the courtroom. After some discussion, the judge asked the foreman: "[Do] you think there is any reasonable belief that by further consideration of the evidence by the

jury you can reach a verdict, or are you hopelessly deadlocked?" The foreman responded, "Hopelessly deadlocked, Your Honor." The court declared a mistrial. There was no objection by the defendant at any time during the exchange, including after the jury was discharged and the judge set the case for retrial.

"It has been established for 160 years . . . that a failure of the jury to agree on a verdict was an instance of 'manifest necessity' which permitted a trial judge to terminate the first trial and retry the defendant." Richardson v. United States, 468 U.S. 317, 323-24 (1984). Indeed, such a situation has been "long considered the classic basis for a proper mistrial," removing any double jeopardy bar to retrial. Arizona v. Washington, 434 U.S. at 509. Simpson argues, however, that the trial judge did not take adequate steps to ascertain that the jury was in fact deadlocked. He notes that the jury had been deliberating for only six to seven hours, that the court failed explicitly to consider alternatives to a mistrial, and that the court did not provide the parties with a hearing on the necessity of a mistrial.

We accord the "highest degree of respect" to a trial judge's finding of manifest necessity based on a hung jury. Crotwell, 896 F.2d at 440 (quoting Arizona v. Washington, 434 U.S. at 510-11). A trial judge is not required to make an explicit finding of manifest necessity so long as adequate justification is apparent from the record. See Arizona v. Washington, 434 U.S. at 516-17. We

find such justification apparent here.  Simpson's trial lasted only a day and a half.

When the mistrial was declared, the jury had been deliberating nearly that long,

and had repeatedly indicated to the court that it was unable to reach a verdict.

The trial judge asked the foreman whether further deliberations would be helpful,

and the foreman replied that the jury was "hopelessly deadlocked."  Under these

circumstances, the trial judge did not abuse his discretion in declaring a mistrial.

Simpson further argues that even if the jury was deadlocked, the impasse

was caused by the trial judge's error, and mistrial therefore was improper.

Simpson alleges that the judge's statement to the jury that it could not convict on

the firearm count unless it convicted on the drug count was inconsistent with our

language in United States v. Hill, 971 F.2d 1461, 1464 (10th Cir. 1992), where we

said that "[w]hile proof of the underlying crime is necessary to convict under §

924(c), a defendant need not be convicted of the underlying crime in order to be

convicted of § 924(c)."

We question Simpson's premise that the jury deadlock was caused by trial

judge error.[1]  Even if we were to accept that premise, however, we would find no

_____

[1]  Although Simpson is correct that a § 924(c) conviction may be sustained
even in the absence of a conviction on the underlying drug count, it is clear that
"proof of the underlying crime is an essential element of a substantive § 924(c)
violation."  Hill, 971 F.2d at 1467 (emphasis added).  The only "error" that could
have been committed by the trial judge, therefore, was in representing to the jury
that it could not bring an irrational and inconsistent verdict, when in fact such

(continued...)

merit to Simpson's argument. "[T]he double jeopardy clause does not require 'manifest necessity' for the events that triggered the mistrial; manifest necessity for the mistrial itself will ordinarily permit a second trial." United States v. Buljubasic, 808 F.2d 1260, 1265 (7th Cir.) (rejecting defendant's claim that because manifest necessity for mistrial flowed from erroneous denial of severance motions, retrial was barred), cert. denied, 484 U.S. 815 (1987). "A rule barring retrial any time a court commits . . . error would be unacceptable in light of society's interest in giving the prosecutor one full and fair opportunity to present his evidence to an impartial jury." United States v. Goland, 897 F.2d 405, 410 (9th Cir. 1990) (quotation omitted). Simpson has alleged no bad faith conduct by the trial judge, but rather only that an innocent error, to which no objection was lodged, contributed to the evident manifest necessity for mistrial. That is an insufficient basis to challenge the exercise of the trial judge's discretion in finding the jury deadlocked. Therefore, Simpson's double jeopardy claim must fail. See Richardson, 468 U.S. at 324-26 ("[W]e have constantly adhered to the

---

[1](...continued)
verdicts have been upheld. See id. at 1468-69; United States v. Powell, 469 U.S. 57, 62-69 (1984) (upholding jury verdict acquitting defendant of drug conspiracy and possession with intent to distribute but convicting defendant of using the telephone to facilitate these same offenses). We decline to consider whether this instruction was error, although we note that Simpson's failure to object to the judge's remarks would, in any event, limit our review to plain error only. See United States v. Meuli, 8 F.3d 1481, 1487 (10th Cir. 1993), cert. denied, 114 S. Ct. 1403 (1994).

rule that a retrial following a 'hung jury' does not violate the Double Jeopardy Clause"; a jury's failure to reach a verdict does not terminate jeopardy).

## II.

Simpson next challenges the sufficiency of the evidence underlying both his convictions. "In reviewing the sufficiency of evidence to sustain a jury's guilty verdict, we examine the evidence in the light most favorable to the government in order to determine whether the evidence . . . together with all reasonable inferences to be drawn therefrom, is substantial enough to establish guilt beyond a reasonable doubt." United States v. Johnson, 42 F.3d 1312, 1319 (10th Cir. 1994) (quotation omitted), cert. denied, 115 S. Ct. 1439 (1995). "We reverse only if no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Wacker, 72 F.3d 1453, 1462-63 (10th Cir. 1995), petition for cert. filed, No. 95-9284 (U.S. June 10, 1996).

## A.

We turn first to the firearm count. Simpson was charged with "using and carrying" a firearm in violation of 18 U.S.C. § 924(c).[2]   At trial, evidence was

---

[2] Simpson was indicted for "using and carrying" a firearm. However, 18 U.S.C. § 924(c)(1) defines the crime in the disjunctive, as did the instruction to the jury. "[A] crime denounced in the statute disjunctively may be alleged in an indictment in the conjunctive, and thereafter proven in the disjunctive." United States v. Parrish, 925 F.2d 1293, 1297 (10th Cir. 1991) (internal quotation marks omitted).

presented that Simpson carried a handgun from the residence where the crack cocaine was found, and placed something under the passenger side of a vehicle. When Simpson was arrested in the second vehicle, a 9 mm handgun was under the front seat of that car, and the jury could have found that this gun was in Simpson's presence during the earlier drug transactions in his home. In addition, some of the ammunition found in the bedroom containing the crack cocaine was 9 mm ammunition. The jury was instructed as follows:

> The phrase "uses or carries a firearm," for purposes of this case, means having a firearm available to assist or aid in the commission of the crime alleged in Count 1 of the indictment.
>
> In determining whether the defendant used or carried a firearm, you may consider all of the factors received in evidence. . . including the nature of the underlying crime of drug trafficking alleged, the proximity of the defendant to the firearm in question, the usefulness of the firearm to the crime alleged, and the circumstances surrounding the presence of the firearm.
>
> A defendant "uses" a firearm when it (1) is readily accessible, (2) is an integral part of the criminal undertaking, and (3) increases the likelihood of success for that undertaking. The government is not required to show that a defendant actually displayed or fired the weapon to prove "use." However, you must be convinced beyond a reasonable doubt that the firearm played a role in or facilitated the commission of the drug offense charged. (R.O.A., Vol. I, doc. 61, instruct. # 27)

The parties do not dispute that this instruction was correct at the time of Simpson's trial. While this appeal was pending, however, the Supreme Court narrowed the broad definition of "use" that this circuit had previously applied and held that "[t]o sustain a conviction under the 'use' prong of § 924(c)(1), the

- 10 -

Government must show that the defendant actively employed the firearm during and in relation to the predicate crime." Bailey v. United States, 116 S. Ct. 501, 509 (1995).   Although Simpson has styled his challenge to the § 924(c) conviction as an objection to the sufficiency of the evidence, we believe the Supreme Court's decision in Bailey requires us to consider whether his conviction can be sustained despite the erroneous instruction of the district court.  See United States v. Ramirez-Ferrer, 82 F.3d 1149, 1151 (1st Cir. 1996).[3]  If we cannot be certain that the jury necessarily based its verdict on conduct that, after Bailey, is still considered criminal, we cannot affirm.  See United States v. Moore, 76 F.3d 111, 113 (6th Cir. 1996); see also United States v. Smith, 82 F.3d 1564, 1567 (10th Cir. 1996) (§ 924(c) conviction cannot stand where "we have no assurance that the jury did not convict on the legally insufficient evidence and erroneous instruction regarding use of the firearm.").

We are guided in part by Bailey itself.  There, the defendants, who were charged with both "using" and "carrying" a firearm, challenged the sufficiency of the evidence supporting their convictions.  Id. at 504.  After articulating a new standard for "use," the Supreme Court evaluated the evidence against the defendants under the appropriate definition.  Holding that the evidence was

_____

[3] Simpson filed a supplemental authority invoking Bailey, which was decided after his reply brief was filed, as support for his sufficiency claim.

insufficient to support a conviction for "use," the Court remanded for the court of appeals to consider whether the convictions could be supported under the "carrying" prong. Applying Bailey, we have held that outright reversal is required only where there is no evidence that could support a defendant's conviction under the proper legal standard. If there is some evidence based on which a jury could have convicted, remand for a new trial is the appropriate remedy. Wacker, 72 F.3d at 1464-65.

Our inquiry is thus twofold: whether the jury was instructed under the proper legal standard and, if not, whether there is some evidence that would have supported a conviction under a proper instruction. We turn first to the proper standard. As Simpson was charged with both using and carrying a firearm, we must consider the jury instruction under both prongs. If the instruction as to one prong was legally erroneous, but the jury was correctly instructed on the other prong, we may affirm Simpson's conviction if we can "determine with absolute certainty that the jury based its verdict on the ground on which it was correctly instructed." United States v. Miller, 84 F.3d 1244, 1257 (10th Cir. 1996). Here, however, the jury was not correctly instructed as to either "use" or "carry."

To support a finding that a defendant used a firearm for purposes of § 924(c), the government must prove that the defendant "actively employed" the gun. Bailey, 116 U.S. at 509. To support a finding that a defendant carried a

firearm, both before and after <u>Bailey</u>, the government must prove "that the defendant transported a firearm in a vehicle and that he had actual or constructive possession of the firearm while doing so," <u>Miller</u>, 84 F.3d at 1259, and must also prove that the defendant possessed and transported the firearm during and in relation to a drug trafficking offense. <u>United States v. Richardson</u>, 86 F.3d 1537, 1548 (10th Cir. 1996). The court here erroneously instructed the jury as to the legal standard for "use." It also defined the phrase "uses or carries" as "having a firearm available to assist or aid in the commission of the crime," which is incorrect after <u>Bailey</u>. It did not separately define "carry," and under the instruction as given the jury could have erroneously decided that the terms "use" and "carry" were redundant. Because the jury was not instructed that it must find possession and transportation of a firearm during and in relation to a drug trafficking crime, we cannot affirm Simpson's § 924(c) conviction.

We turn next to whether there was evidence that could have supported Simpson's conviction under a proper jury instruction. We conclude there is no evidence that Simpson actively employed the firearm. Although the jury could have concluded that Simpson had the gun in his possession while conducting drug transactions, the government offered no evidence that Simpson brandished, displayed, bartered, struck with, fired, disclosed, mentioned, or in any other way actively employed the firearm. <u>See</u> <u>Bailey</u>, 116 S. Ct. at 508. Therefore, the

- 13 -

evidence was legally insufficient to support a finding that Simpson used a firearm. However, we believe there was evidence from which a jury could have concluded that Simpson carried the firearm that was found under the front seat of the car in which he was riding, and that such carrying was during and in relation to a drug trafficking offense. He clearly transported the firearm, and it was accessible to him in such a way that he had dominion and control over it. There is also evidence based upon which a jury could conclude that Simpson carried the weapon during and in relation to drug trafficking. Officers observed apparent drug trafficking involving Simpson immediately prior to the moment Simpson was seen exiting the house with what the jury could have concluded was the firearm charged. Because there was some evidence of carrying, as that term is properly defined, we remand for a new trial on the issue of whether Simpson carried the firearm for purposes of § 924(c). See United States v. Spring, 80 F.3d 1450, 1466 (10th Cir. 1996), petition for cert. filed, No. 95-9420 (U.S. June 25, 1996); United States v. Smith, 82 F.3d 1564, 1567 (10th Cir. 1996).

**B.**

To support a conviction for possession with intent to distribute crack cocaine, the government must prove that Simpson knowingly possessed the substance with intent to distribute. Possession need not be actual, but may be constructive. U.S. v. Culpepper, 834 F.2d 879, 881-82 (10th Cir. 1987). "In

order for an individual constructively to possess property, he must knowingly hold the power and ability to exercise dominion and control over it . . . . With regard to narcotics, we have defined constructive possession as an appreciable ability to guide the destiny of a drug." United States v. Verners, 53 F.3d 291, 294 (10th Cir. 1995) (quotation omitted).

Simpson claims the evidence was insufficient to support the conclusion that he had constructive possession of the drugs found in the bedroom at 2350 N. Erie. We disagree. Among the evidence linking Simpson to the bedroom were photographs of Simpson, and documents addressed to Simpson at 2350 North Erie, found in the room. The detective who searched the room testified that a baseball cap in the room matched a cap worn by Simpson in one of the pictures. Additionally, Simpson's grandmother told the police that the room in which the crack cocaine was found was Simpson's bedroom. Simpson himself, upon his arrest, gave his address to police as 2350 North Erie, and signed his bond papers with that address. A rational jury reasonably could infer that Simpson currently occupied that bedroom. Even if the jury concluded that Simpson was not currently living at the residence, it reasonably could conclude that Simpson continued to exercise dominion and control over the bedroom, and therefore was in constructive possession of the cocaine found therein. See, e.g., Verners, 53 F.3d at 293-94 (evidence of constructive possession sufficient where drugs found

in defendant's mother's house, in defendant's old bedroom and in kitchen; defendant had used the house as his residence at one time, still visited the house regularly, still gave the residence as his address, still stored possessions there, but apparently did not sleep in the bedroom).

## IV.

Finally, Simpson challenges the district court's use of a prior conviction to enhance his sentence. The district court's factual findings at sentencing are reviewed for clear error, while its interpretation of the Sentencing Guidelines is a question of law reviewed de novo. United States v. Bridges, 50 F.3d 789, 790-91 (10th Cir. 1994).

The probation officer who prepared Simpson's presentence report listed a conviction for battery dated April 25, 1994 in the Municipal Court of Wichita, Kansas. The probation officer assessed one point to Simpson's criminal history for this conviction, see U.S.S.G. § 4A1.1(c), thus raising Simpson's criminal history category from I to II, and the applicable guideline range from 151-188 months to 168-210 months. Simpson objected that the battery conviction was the result of a guilty plea that his attorney had entered on his behalf without his permission. He asserted that he had never been sentenced and the case was not final because he intended to appeal the Municipal Court conviction. This appeal,

he asserted, would result in a "trial de novo," and therefore there was as yet no conviction.

The probation officer responded by obtaining a certified docket sheet from the Municipal Court in Wichita. The docket sheet indicates that the defendant pled nolo contendere to battery and was found guilty by the court on April 25, 1994. The district court concluded that neither Simpson's stated intention to appeal the conviction nor the fact that Simpson had not yet been sentenced precluded the conviction from being counted. See U.S.S.G. §§ 4A1.2(a)(4) ("Where a defendant has been convicted of an offense, but not yet sentenced, such conviction shall be counted . . ."); 4A1.2(l) ("Prior sentences under appeal are counted except as expressly provided below."). The court further concluded it could not entertain a collateral attack on the validity of the conviction, and overruled Simpson's objections without conducting an evidentiary hearing.

On appeal, Simpson asserts that he is not challenging the constitutionality of the conviction or whether the conviction was countable under the Guidelines, but rather whether the district court "had sufficient evidence to conclude that the conviction was genuine." Br. of Appellant at 28. The government must establish the fact of a prior conviction by a preponderance of the evidence. United States v. Ortiz, 63 F.3d 952, 955 (10th Cir. 1995). Simpson argues that a docket sheet alone is insufficient to meet this burden

We believe that a certified docket sheet is adequate, absent some contradictory evidence by the defendant, to establish the existence of a prior conviction for this sentencing purpose. See, e.g., United States v. Dickens, 879 F.2d 410 (8th Cir. 1989) (affirming, over defendant's challenge to validity, consideration of prior conviction of which only record was state court docket sheet). In any event, Simpson conceded the fact of his conviction below. In his written objections to the presentence report, Simpson stated that his attorney's staff had informed him that he did not need to appear at the trial on the domestic violence charge, and when he did not do so, the attorney "without the defendant's permission, entered his plea." At the sentencing hearing, Simpson repeated that the attorney, "without the defendant's permission, either went to trial or entered some kind of plea against the defendant." Having described to the district court how the conviction was obtained, Simpson may not now challenge its existence. Cf. United States v. Lopez-Gutierrez, 83 F.3d 1235, 1246-47 (10th Cir. 1996) (defense counsel's concession as to validity of prior offense rendered harmless district court's failure to inform defendant of his opportunity to challenge that conviction in the context of 21 U.S.C. § 851(b)).

Simpson also argues that the conviction is not "genuine" because his counsel entered a plea without his consent. We have held that "with the exception of a collateral attack based on the complete denial of counsel, a district court

sentencing a defendant under the career offender provisions of the Guidelines cannot consider a collateral attack on a prior conviction." United States v. Garcia, 42 F.3d 573, 581 (10th Cir. 1994); see also U.S.S.G. § 4A1.2, comment., application note 6 ("With respect to the current sentencing proceeding, this guideline and commentary do not confer upon the defendant any right to attack collaterally a prior conviction or sentence beyond any such rights otherwise recognized in law. . . ."). We see no distinction, for these purposes, between the career offender provisions contained in Guideline 4B1.1 which were applied in Garcia, and the criminal history calculations provided by Guideline 4A1.1 used to calculate Simpson's sentence. The district court correctly concluded that it was precluded from considering Simpson's collateral attack on the prior conviction, and we affirm the determination of sentence.

## V.

Simpson's conviction for violating 18 U.S.C. § 924(c)(1) is REVERSED and REMANDED for further proceedings. All other aspects of the district court's judgment are AFFIRMED.