**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 11 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

　　　Plaintiff - Appellee,

v.

LUIS ALBERTO RAMIREZ-SOBERANES,

　　　Defendant - Appellant.

No. 99-4097

(D. Utah)

(D.C. No. 97-CR-301-C)

**ORDER AND JUDGMENT** *

Before **BRISCOE** , **ANDERSON** , and **LUCERO** , Circuit Judges.

　　　Luis Alberto Ramirez-Soberanes appeals his conviction for possession of a

firearm by an illegal alien, in violation of 18 U.S.C. § 922(g)(5), contending that

his constitutional rights under　　Batson v. Kentucky　, 476 U.S. 79 (1986), were

violated by the prosecutor's use of a peremptory challenge to remove an African-

American from the jury panel.  Specifically, he argues that the district court erred

in crediting the government's proffered race-neutral explanation for the

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel.  The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

peremptory challenge. Ramirez-Soberanes also asserts that the district court erred in instructing the jury on constructive possession of a firearm, and that the prosecutor's comments during closing argument constituted a constructive amendment of the indictment and impermissibly shifted the burden of proof to the defense. For the reasons set forth below, we affirm.

## BACKGROUND

On September 25, 1997, law enforcement officials executed a search warrant on a Park City, Utah, condominium, based on information that a suspect named Carlos was selling cocaine out of the unit. After entering the condominium, officers ordered the nine Hispanic males present, including the defendant, to lie face down on the floor while officers performed a protective sweep of the premises. Officers then asked the men if any firearms were in the apartment. Deputy Sheriff Brad Wilde testified that defendant responded, "I have a gun, and it's in the closet." R. Vol. VII at 90. In the closet, police found a .45 caliber semi-automatic handgun, a loaded magazine, and a box of .45 caliber ammunition. The defendant was taken to the sheriff's office, where, after waiving his Miranda rights, he admitted that he was a Mexican citizen, that he was present in the United States illegally, and that he had purchased the .45 caliber handgun from a pawn shop approximately six months before.

On October 2, 1997, a federal grand jury indicted defendant for possession of a firearm by an illegal alien, and possession of ammunition by an illegal alien, both in violation of 18 U.S.C. § 922(g)(5).

At jury selection, defendant objected to the prosecution's peremptory strike of Ms. Hannah Brown, an African-American woman. Upon the objection, the district court judge and counsel retired to the judge's chambers, where the prosecutor, Mark Vincent, explained his justification for removing Ms. Brown:

> MR. VINCENT: The reason is her place of employment; has nothing to do with her ethnic background.
>
> THE COURT: Where does she work?
>
> MR. VINCENT: She works at McDonald's.
>
> THE COURT: The reason–she works at McDonald's and you find that significant is what?
>
> MR. VINCENT: Nothing more than they have a tendency in fast-food restaurants to deal with–in lot of areas minority groups, legals, illegals. There may be some sympathies that are there one way or the other. And just to eliminate any sense of prejudice one way or the other, we felt that it was appropriate to strike her.

R. Vol. VII at 49. In restating his grounds for the peremptory challenge, Mr. Vincent explained:

> Well, I'm not prejudiced against her for being black. . . . If she was white, if she was Hispanic, if she was any other ethnicity, it is my experience that people who work at McDonald's have a lot of dealings with a large group of people, including aliens. And I don't

know if there's any sympathies one way or the other, but because there is a propensity for her to have dealings with a large group of people, that may or may not have prejudiced her. I don't know. I just feel that it's sufficient.

Id. at 50. To support his assertion that he had not removed Ms. Brown because of her race, Mr. Vincent emphasized that he had not used peremptory challenges to remove two Hispanic jurors from the venire.

After listening to Mr. Vincent's explanation, the district court accepted his proffered reason, stating: "Mr. Vincent has given an answer that I think satisfies Batson. He says that in his experience people who work at McDonald's might have some personal experiences that might, and I think he said, either way affect their ability to be impartial." Id. Ms. Brown was excused from the jury.

At the conclusion of trial, the district court discussed the proposed jury instructions with counsel. Defendant objected to proposed Instruction No. 19, arguing that it inadequately defined constructive possession, and suggested that the court instead adopt the definition contained in United States v. Mills, which stated that "[a] person has constructive possession when he or she knowingly holds ownership, dominion, or control over the object and the premises where it is found." 29 F.3d 545, 549 (10th Cir. 1994). After reviewing Mills, the court agreed that it set forth the proper definition of constructive possession, and made several attempts at rephrasing the instruction to conform to the Mills language.

-4-

Due to some apparent confusion about how the instruction would read, the court then stated:

> I'll tell you what. Let me have [the clerk] type it up, and then I will go over [instruction number] 19 with you again at our next break. . . . I'll make a copy of the 19 for you so that we make sure that we're all on the same track, and we'll go over it one more time before instructing the jury, okay?

R. Vol. VII at 151. After the change was made, the court read the amended instruction to both counsel. Though the amended instruction omitted some of the Mills language, defendant's counsel accepted the instruction without objection. Copies of the final instructions were given to both counsel, and neither party objected to any of the instructions when they were subsequently presented to the jury.

In his closing argument, Mr. Vincent reviewed the evidence, arguing that the government had proven each element of the charges beyond a reasonable doubt. With respect to defendant's possession of the gun, he told the jury that "to possess means to have something within your control," R. Vol. VII at 179, and suggested that the defendant first possessed the gun when he purchased it on March 15, 1997. He then stated: "We have not heard any evidence that that firearm was ever sold, was ever given, was ever transferred to any other individual in this case." Id. Upon objection by defense counsel, the court admonished the jury that "the burden is always on the government to prove its

-5-

case. The defendant does not have to do anything. The defendant does not have to contest evidence." Id.

Mr. Vincent continued with his argument that defendant had possessed the gun both when he purchased it on March 15, and at the time of the search, on September 25. He stated to the jury that "either of those dates works" because the indictment charged that "on or about September 25, 1997," defendant had possessed the firearm, and that "within reason, and within six months, that is reasonable." Id. at 184.

Defendant did not object to this argument, though he vigorously contested it in his own closing argument, telling the jury that the indictment's charge could not be stretched to cover defendant's possession at the time of the March 15 purchase. He argued that if the government had wanted to prove the March 15 possession, it should have charged the offense as a March 15 possession. Defendant argued that the government had failed to prove that he had possessed either the gun or the ammunition on September 25, 1997.

In his rebuttal argument, the prosecutor focused entirely on the September 25 search, arguing that defendant's own statements made during the search demonstrated that he held control and dominion over the gun at that time. He then stated that "ownership, although isn't conclusive of possession, it goes a

-6-

long ways to say that you have possession of something, you have dominion and control." R. Vol. VII at 195.

The jury found defendant guilty of possession of a firearm by an illegal alien, but acquitted him of the possession of ammunition charge.

**DISCUSSION**

**I. Peremptory Challenge**

Defendant first argues that the district court erred in allowing the prosecutor to remove Ms. Brown from the jury panel. In Batson v. Kentucky, 476 U.S. 79 (1986), the Supreme Court held that the Constitution prohibits a prosecutor from using a peremptory challenge to strike a potential juror on account of her race. Under the three-step procedure set forth in Batson, a defendant must first make a prima facie showing of purposeful racial discrimination in the selection of the jury. See id. at 96. "Once the defendant makes a prima facie showing, the burden shifts to the [prosecution] to come forward with a neutral explanation" for the peremptory challenge. Id. at 97. If the court concludes that the prosecution's articulated reason is race neutral, it must then determine whether the defendant has carried his burden of proving purposeful discrimination. See id. The question of whether a proffered explanation is race neutral is a matter of law we review de novo, see United

-7-

States v. Sneed, 34 F.3d 1570, 1580 (10th Cir. 1994), while the ultimate question of whether intentional discrimination occurred is a question of fact we review under the clearly erroneous standard, see United States v. Davis, 40 F.3d 1069, 1077 (10th Cir. 1994).

Defendant focuses on step two[1] of the Batson analysis, arguing that the prosecutor's articulated reason for striking Ms. Brown was not race neutral. A neutral explanation is one "based on something other than the race of the juror,"[2] and "[u]nless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be deemed race neutral." Hernandez v. New York, 500 U.S. 352, 360 (1991). The proffered reason need not be "persuasive, or even

---

[1]While the district court made no preliminary finding that defendant had made a prima facie case of purposeful discrimination, this preliminary issue becomes moot once the prosecutor has offered a race-neutral explanation for peremptory challenges, and the district court has ruled on the ultimate question of intentional discrimination. See Hernandez v. New York, 500 U.S. 352, 359 (1991).

[2]The dissent defines a race neutral reason as "a reason other than race," relying on part of a sentence from Hernandez. 500 U.S. at 371. However, both the plurality and concurring opinions in Hernandez make clear that the focus of the Batson analysis is the race of the juror. See id. at 359 ("A neutral explanation in the context of our analysis here means an explanation based on something other than the race of the juror.") (Kennedy, J., plurality) (emphasis added); id. at 373 ("Consistent with our established equal protection jurisprudence, a peremptory strike will constitute a Batson violation only if the prosecutor struck a juror because of the juror's race.") (O'Connor, J., concurring) (emphasis added).

plausible," so long as it is facially valid.     Purkett v. Elem  , 514 U.S. 765, 768 (1995).

Here, the prosecutor asserted that he struck Ms. Brown from the venire because she worked at McDonald's, and that, in his experience, persons who work in fast-food restaurants might have sympathies or prejudices for or against minorities or aliens.  Defendant does not seriously contest the government's assertion that it also would have struck a white McDonald's employee, an assertion supported by the district court's finding.  Essentially, defendant argues that under  Batson , no juror can be struck for suspected bias favorable to co-workers or customers with whom the juror is in close daily contact, if the co-workers or customers are members of a minority group.  We are not persuaded that Batson  and Hernandez  go that far.

Federal courts have consistently upheld peremptory challenges based upon the employment of the juror.    See  United States v. Alvarado   , 951 F.2d 22 (2d Cir. 1991) (allowing peremptory strike because juror was a social worker);       United States v. Lane  , 866 F.2d 103 (4th Cir. 1989) (current and past employment are legitimate race-neutral grounds for peremptory strikes);     United States v. Johnson   , 905 F.2d 222 (8th Cir. 1990) (allowing peremptory strike where juror worked for state family services agency);    United States v. Johnson   , 941 F.2d 1102 (10th Cir. 1991) (allowing peremptory challenge where juror worked as Legal Aid

secretary).  Each of these explanations is race neutral because it is "based on something other than the race of the juror."  Hernandez , 500 U.S. at 360. [3]

When reviewing peremptory challenges, "we must keep firmly in mind that Batson 's holding rests squarely on the Equal Protection Clause."  United States v. Uwaezhoke , 995 F.2d 388, 393 (3d Cir. 1992).  In the context of  Batson , the Equal Protection Clause does not protect an individual from being removed from a jury because of the particular viewpoints she is suspected of holding; it only prohibits the removal of a juror for viewpoints attributed to the juror because of her race.  Where a prosecutor alleges that an individual may have acquired sympathies or prejudices through her employment, [4] and not simply because she

_____

[3]In the two cases defendant cites on this issue, the prosecutors' articulated reasons for exercising peremptory challenges were based, at least in part, upon the race of the juror.  See United States v. Wilson, 884 F.2d 1121, 1124 (8th Cir. 1989); Thompson v. Florida, 548 So. 2d 198, 202 (Fla. 1989).  Hence, because the reason given in the present case was based on the juror's employment, the cited cases are inapposite to our analysis.  We recognize that the Ninth Circuit, in United States v. Bishop, 959 F.2d 820 (9th Cir. 1992), found the government's strike of a black juror because she lived in a high-crime neighborhood to be an impermissible surrogate for racial bias.  However, that case and similar state cases are distinguishable from this case on their facts and, in any event, do not control our decision.

[4]Contrary to the dissent's assertion, the holding in this case does not extend beyond the place of employment, as the text makes clear.

-10-

shares the race of the defendant, the prosecutor has articulated a race-neutral explanation. [5]

Of course, the trial court is not obligated to believe the reason given by the prosecution. If it concludes that the juror was actually struck because of his or her race, it may reject the government's proffered reason as pretextual. However, the question of whether a prosecutor's explanation is merely a pretext for racial bias should be addressed in step three of the Batson analysis, see Purkett, 514 U.S. at 768; at the second stage "the issue is the facial validity of the prosecutor's explanation." Hernandez, 500 U.S. at 360. In the present case, after the prosecutor articulated his race-neutral reason for striking Ms. Brown, and after defendant offered his counter argument, the district court accepted the prosecutor's explanation. Because this decision rests primarily on credibility determinations, we give great deference to the district court's findings. See Batson, 476 U.S. at 98 n.21. In reviewing the record, we find no clear error.

In sum, we hold that, as a matter of law, the prosecutor offered a race-neutral explanation for his peremptory strike of Ms. Brown, and that the district court did not err in its ultimate conclusion that the defendant failed to prove purposeful racial discrimination.

---

[5]Indeed, the defense in this case could have exercised a peremptory challenge to remove a McDonald's worker from the jury pool, on the theory that his or her workplace associations may have produced an anti-minority bias.

## II. Jury Instructions

The indictment charged that

> on or about September 25, 1997, in the Central Division of the District of Utah, Luis Alberto Ramirez-Soberanes, the defendant herein, then being an alien illegally and unlawfully in the United States of America, did knowingly possess in and affecting interstate commerce a firearm . . . in violation of Title 18, United States Code § 922(g)(5).

Indictment at 1-2, R. Vol. I, Doc. 10. In a § 922(g) case, the government may prove possession that is either actual or constructive. See United States v. Cardenas, 864 F.2d 1528, 1533 (10th Cir. 1989). On this requirement, the district court instructed the jury as follows: "If you find that the defendant either had actual possession or had ownership, dominion, or control over the firearm, even though it may have been in the physical possession of another, you may find that the government has proved possession." Instruction No. 19, R. Vol. I, Doc. 91.

Defendant contends that, under Mills, constructive possession occurs only when a person "knowingly holds ownership, dominion, or control over the object and the premises where it is found," 29 F.3d at 549 (emphasis added), and that the district court erred by omitting the words "and the premises where it is found" from the instruction.

Because defendant did not object to the instruction given, we review for plain error only. See United States v. Fabiano, 169 F.3d 1299, 1302 (10th Cir. 1999). However, we note that the standard of review does not control our

-12-

decision, as we conclude that, under any standard, the omission of the words "and the premises where it is found" was not erroneous.

In United States v. Culpepper , 834 F.2d 879 (10th Cir. 1987), we reaffirmed a twenty-year-old holding that a person has constructive possession of an item when he "knowingly hold[s] the power and ability to exercise dominion and control over it." Id. at 881 (citing United States v. Massey , 687 F.2d 1348, 1354 (10th Cir. 1982); United States v. Zink , 612 F.2d 511, 516 (10th Cir. 1980); Amaya v. United States , 373 F.2d 197, 199 (10th Cir. 1967)). We restated the "dominion and control over the item" rule in United States v. Parrish , 925 F.2d 1293, 1296 (10th Cir. 1991), abrogated on other grounds by United States v. Wacker , 72 F.3d 1453 (10th Cir. 1996), and added that, in some instances, "[e]xercising dominion and control over a residence where contraband is concealed may constitute constructive possession of the narcotics." Id.

After Parrish , a panel of this circuit stated that "[g]enerally, a person has constructive possession of narcotics if he knowingly has ownership, dominion or control over the narcotics and the premises where the narcotics are found ." United States v. Hager , 969 F.2d 883, 888 (10th Cir. 1992) (emphasis added), abrogated on other grounds by Bailey v. United States , 516 U.S. 137 (1995). For this proposition, the Hager panel cited only Parrish . However, in suggesting a two-part test that lists in the conjunctive the requirements that a person have

-13-

ownership, dominion or control over the contraband and over the premises where it is found , Hager departed from both Parrish and the constructive possession standards of other circuits that use similar language but list the factors in the disjunctive .[6]

Since Hager , many of our cases (including the Mills case cited by defendant) have repeated this general statement, although none of them have been decided based on a conjunctive requirements of dominion over an item and the premises. However, in other recent cases, we have cited the Culpepper definition, finding constructive possession where the defendant has the power to exercise control and dominion over the item alone. See, e.g. , United States v. Sullivan , 919 F.2d 1403, 1430 (10th Cir. 1990); United States v. Simpson , 94 F.3d 1373, 1380 (10th Cir. 1996). In any event, Culpepper is the law in this circuit; therefore, constructive possession exists where the defendant has the power to exercise control or dominion over the item. See 834 F.2d at 881. Control or

_____

[6]See, e.g., United States v. Blue, 957 F.2d 106, 107 (4th Cir. 1992) (constructive possession when evidence shows "ownership, dominion, or control over the contraband itself or the premises or vehicle in which the contraband is concealed") (emphasis added); United States v. McKnight, 953 F.2d 898, 901 (5th Cir. 1992) (constructive possession when evidence shows "ownership, dominion, or control over the contraband itself or over the premises in which the contraband is located") (emphasis added); United States v. Wainwright, 921 F.2d 833, 836 (8th Cir. 1990) (constructive possession over contraband when evidence shows "ownership, dominion or control over the contraband itself, or dominion over the premises in which the contraband is concealed") (emphasis added).

-14-

dominion over the premises where the item is found is therefore a factor, see Parrish , 925 F.2d at 1296, but not a requirement, for finding constructive possession of the item itself. Accordingly, the district court's omission of the words "and the premises where it is found," whether intentional or accidental, was not error.

Defendant also complains that, under the instruction given, mere ownership of the gun would be sufficient to constitute constructive possession. However, defendant did not make this specific objection in any of the discussions of the jury instructions. Accordingly, we will not reverse unless the district court committed plain error. See Fabiano , 169 F.3d at 1302. Such an error must be obvious and affect the defendant's substantial rights. See United States v. Olano , 507 U.S. 725, 731 (1993). We see no obvious error in the district court's instruction, and furthermore, see nothing that "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" United States v. Young , 470 U.S. 1, 15 (1985) (quoting United States v. Atkinson , 297 U.S. 157, 160 (1936)). Accordingly, we find no plain error.

### III. Constructive Amendment

Defendant next contends that the prosecutor's statements in closing argument, where he told the jury that possession on either March 15 or

-15-

September 25 was sufficient for conviction, constructively amended the indictment and allowed the jury to convict him for possessing the gun on a date not charged in the indictment. We disagree.

The Supreme Court has emphasized that the Fifth Amendment does not "permit a defendant to be tried on charges that are not made in the indictment." Stirone v. United States, 361 U.S. 212, 217 (1960). A constructive amendment occurs when the evidence presented, together with the jury instructions, raises a substantial likelihood that the defendant was convicted of an offense other than that charged in the indictment, United States v. Hornung, 848 F.2d 1040, 1046 (10th Cir. 1998), and requires reversal per se.

Even if we assume that the March 15 possession was a different offense than the "on or about September 25" possession charged in the indictment, we conclude that there is no substantial likelihood that the jury convicted defendant for his March 15 purchase. The court's instructions to the jury properly limited the charges on which defendant could be convicted to those occurring "on or about September 25." Instruction No. 17, R. Vol. I, Doc. 91. In its opening charge, the court instructed the jury that "the statements, the arguments, the objections by the attorneys are not evidence" and that they "must not consider them." R. Vol. VII at 53. In its final instructions, the court instructed the jury that if any difference appears between the law as stated by counsel and that stated

-16-

by the court in its instructions, the instructions govern. <u>See</u> Instruction No. 1, R. Vol. I, Doc. 91. We must presume that the jurors remained loyal to their oaths and conscientiously followed the district court's instructions. <u>See</u> <u>Francis v. Franklin</u>, 471 U.S. 307, 324 n.9 (1985). Furthermore, the prosecutor's rebuttal argument focused entirely on the evidence of defendant's September 25 constructive possession.

Accordingly, we conclude that the prosecutor's stray comments during closing argument did not constructively amend the indictment. <u>Cf.</u> <u>United States v. Williams</u>, 106 F.3d 1173, 1176 (4th Cir. 1997) (no impermissible amendment when indictment alleged distribution of methamphetamine and prosecutor's closing argument indicated that admission to distribution of marijuana proved guilt, because jury instructed that closing argument not evidence); <u>United States v. Russo</u>, 708 F.2d 209, 212-14 (6th Cir. 1983) (no impermissible amendment of indictment charging extortion by threats of economic loss when evidence introduced at trial demonstrated extortion by threats or fear of violence because jury instructions clearly limited charge to extortion by threat of economic loss).

## IV. Burden Shifting

Defendant's final contention is that the prosecutor's comments in closing argument impermissibly shifted the burden of proof to the defense. In reviewing

the prosecutor's remarks, we think they are more properly characterized as an attempt to summarize the evidence and comment on its probative value. However, even assuming arguendo that the prosecutor's comments implied a burden shift, the district court immediately gave a curative instruction that was accurate and straightforward. The prosecutor's closing arguments did not deprive defendant of a fair trial. See United States v. Dickey, 736 F.2d 571, 595-96 (10th Cir. 1984).

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge

99-4097, United States v. Ramirez-Sobreranes

**LUCERO** , Circuit Judge, concurring in part and dissenting in part.

I concur in the majority opinion except as to the Batson claim. As to that issue, because the prosecution's proffered reason for its peremptory challenge is expressly race-based, I dissent. Batson and its progeny clearly disallow the result reached today.

"[A] race-neutral reason for a peremptory challenge means a reason other than race." Hernandez , 500 U.S. at 371. In the present case, the prosecution proffered an explicitly race-based explanation for its peremptory challenge against venireperson Brown, an African American:

> She works at McDonald's . . . . [McDonald's employees] have a tendency in fast-food restaurants to deal with—in lot of areas minority groups, legals, illegals. There may be some sympathies that are there one way or the other.

(VII R. at 49.) The record demonstrates that appellant is a member of a racial minority. I simply cannot read the prosecution's comment as being race-neutral and thus conclude the trial court's decision violates Batson .

Hernandez , involving a peremptory challenge to venirepersons because of their language skills, holds that any race-neutral reason meets the prosecution's second-step burden. This case, by contrast, simply does not involve a race-neutral reason. [7] In United States v. Bishop , 959 F.2d 820, 825-26 (9th Cir.

_____

[7] This case is also easily distinguishable from the other cases cited by the

(continued...)

1992), the Ninth Circuit holds unconstitutional a peremptory challenge based on a venireperson's "sympathy for minorities" arising from her residence in a minority neighborhood.    Bishop declares the prosecutor's proffered reason "amounted to little more than the assumption that one who lives in an area heavily populated by poor black people could not fairly try a black defendant." Id. at 825.  Contrary to the majority's contention,    Bishop struck down the same reason the prosecution proffered in the instant case—"sympathy for minorities"—and thus is not distinguishable on its facts.  With its holding today, the majority creates a circuit split in this area of    Batson jurisprudence.

Most importantly, I am troubled by the short shrift the majority opinion accords to the core constitutional concerns underlying    Batson.  The instant case differs factually from   Batson only in that the prosecution has challenged the venireperson, an African American, because of her    sympathies for minorities, not because she is  herself a minority.  That factual difference does not render the government's explanation constitutionally acceptable.    See Bishop, 959 F.2d at 825-26.  Under the majority's approach,    Batson is stripped of all practical significance:  To justify the exercise of peremptory challenges, parties seeking to

---

        [7](...continued)
majority in support of the constitutionality of "peremptory challenges based upon the employment of the juror."  (Maj. Order at 9.)  None of those cases uphold peremptory challenges for which a party proffered a race-based reason.

- 2 -

exclude minority venirepersons from juries, in deliberate contravention of the Supreme Court's <u>Batson</u> jurisprudence, henceforth need offer only "sympathy for minorities," by virtue of residence, family connections, or place of employment, as a transparent proxy for venirepersons' race, thereby eviscerating "'the very idea of a jury . . . composed of the peers or equals of the [defendant]; that is, of his neighbors, fellows, [and] associates.'" <u>Batson</u>, 476 U.S. at 86 (quoting <u>Strauder v. West Virginia</u>, 100 U.S. 303, 308 (1879)) (further citation omitted). [8]

I would remand for a new trial.

---

[8] That is not to say that the principle of <u>Batson</u> race-neutrality need be taken to absurd extremes, for example, to prohibit the striking of a venireperson who professes the intent to nullify with respect to minority jurors. <u>Cf.</u> <u>Heno v. Sprint/United Managment Co.</u>, Nos. 98-1085, 98-1093, 98-1154, at 1-4 (10th Cir. April 3, 2000) (slip op.) (Seymour, Chief Circuit Judge, concurring) (discussing the scope of the constitutional concerns underlying <u>Batson</u> and <u>Hernandez</u>). But we do not face that situation in the present case, in which there is no allegation that venireperson Brown had any such intention.