**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 8 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JAMES DOUGLAS ROE,

Defendant-Appellant.

No. 02-1466

District of Colorado

(D.C. No. 01-CR-262-N)

**ORDER AND JUDGMENT** *

Before **TACHA,** Chief Judge **, McKAY** and **McCONNELL** , Circuit Judges.

On April 5, 2002, Defendant James Roe pleaded guilty to one count of making a false statement in connection with the acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6) and § 924(a)(2).  According to Mr. Roe's interpretation of the Guidelines, the length of his sentence depends on the status of a 1984 conviction that Defendant sustained in San Diego, California.  If the prior conviction is taken into account, Mr. Roe's sentence under the Sentencing

---

*This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Guidelines will be in the range of 51-63 months. If it is not, the range will be only 4-10 months.

## Background

In 1984, Mr. Roe received a sentence of four years probation for assault with a deadly weapon in state court in California. After he sustained separate convictions and an 18-month prison term in Colorado for willful destruction of wildlife and hunting with an artificial light, the California court issued an *ex parte* revocation of his probation. While in prison in Colorado, Mr. Roe wrote to the San Diego District Attorney requesting a final disposition of his California case. In response, the district attorney's office sent a letter to Colorado prison officials explaining that Mr. Roe had two alternatives. He could either (i) request sentencing *in absentia* pursuant to California Penal Code § 1203.2a,[1] in which case the district attorney would recommend that the California sentence run concurrently with the remainder of the Colorado sentence, or (ii) he could be returned to California after the completion of the Colorado commitment. The letter included the forms necessary for Mr. Roe to elect the *in absentia* proceedings. Mr. Roe refused to sign the forms because he did not know how much prison time he would get as a result.

---

[1] Now codified as California Penal Code § 1203.2b.

Unsatisfied, Mr. Roe sent a second letter to the San Diego District Attorney stating that he wanted an official plea offer, as well as a letter to the San Diego Superior Court in which he offered to plead guilty to the probation violation in exchange for a prison term that would run concurrently with his Colorado commitment. In response to these letters, the district attorney's office sent a letter to Mr. Roe which explained:

> By requesting Sentencing in Absentia, you will be serving the time concurrently with that which you are now serving in Colorado. In most cases, the term is deemed to have begun when you entered the prison on your current sentence.
>
> Alternately, if you still wish to not sign the forms, the detainer will stay in place and you will be returned to California upon completion of your Colorado commitment.

R. vol. 1, ex. 10.

Upon receipt of this second letter, Mr. Roe signed the requisite forms authorizing the California court to sentence him *in absentia*. The form, captioned "Request for Disposition of Probation, Waiver of Appearance and Right to Attorney," reads in relevant part:

> This is to notify you, in accordance with the provisions of section 1203.2a of the California Penal Code, on my present imprisonment and to request this Court to make disposition of my said Probation as required by law.
>
> This is to further notify you that I waive any and all rights that I may have to be present at any hearings in this matter, and I further waive any and all rights that I may have to be represented by an attorney at any and all stages of these

3

proceedings.

*Id*. at ex. 12.

On September 8, 1987, Mr. Roe, *in absentia*, received a sentence of three years, to run concurrently with the Colorado term. Mr. Roe obtained the benefit of having seven months of his California term overlap with the Colorado sentence. After concluding his time in Colorado, Mr. Roe was transferred to California to complete his sentence. He was paroled eleven months later.

In his filings before the district court, Mr. Roe argued his California prison term was the product of an uncounseled waiver and is therefore subject to collateral attack during the sentencing proceeding. According to Mr. Roe, disregarding this prison term would implicate several Guidelines provisions. First, pursuant to U.S.S.G. § 2K2.1, his base offense level would drop from 20 to 14. Secondly, he would be eligible for an 8-level reduction in the base offense level under the "sporting use exception" outlined in § 2K2.1(b)(2). Lastly, his criminal history would shift from Category VI to Category V. Overall, Mr. Roe claims that the effect of excluding the California prior sentence would be to lower his sentence from a range of 51-63 months to a range of 4-10 months.[2]

After a hearing on the merits, the district court found the California

---

[2] While we do not necessarily endorse Mr. Roe's interpretation of the Guidelines, the government does not challenge his reading. Accordingly, for purposes of this decision, we assume Mr. Roe's calculation to be correct.

4

conviction constitutionally valid and sentenced Mr. Roe to 63 months in prison. He now appeals this sentence.

## Analysis

In *United States v. Garcia*, 42 F.3d 573 (10th Cir. 1994), we defined the circumstances under which defendants can collaterally attack prior convictions for purposes of reducing their criminal history scores under the Guidelines. The same standards are used to determine whether to count prior convictions under § 2K2.1a(1)-a(4)(a) (offense level) and under § 4A1.1 (criminal history). *See* U.S.S.G. § 2K2.1 cmt. n.15; *United States v. Hines*, 133 F.3d 1360, 1362 n.3 (1998). Our analysis under *Garcia* regarding criminal history is therefore equally applicable to calculation of the base offense level.

*Garcia* held that the Guidelines' default rule is that a sentencing court is prohibited from reconsidering the validity of prior convictions. The conviction, however, is subject to collateral review if (i) the defendant identifies a particular statute, rule, or regulation independent of the Guidelines authorizing collateral review, or (ii) the district court is constitutionally mandated to review the conviction. 42 F.3d at 580. Because Mr. Roe has not identified any rule or statute authorizing collateral review, we turn to constitutional principles.

In determining the scope of a sentencing court's constitutional obligations, *Garcia* relied heavily on the Supreme Court's holding in *Custis v. United States*,

5

511 U.S. 485 (1994), which discussed a similar issue under the Armed Career

Criminal Act, 18 U.S.C. § 924(e). As a general matter, *Custis* held that the

Constitution did not require a sentencing court to consider collateral attacks on

prior convictions. However, after examining the principles delineated in *Gideon*

*v. Wainwright*, 372 U.S. 335 (1963), and its progeny, the Supreme Court

recognized an exception for cases where the prior conviction was obtained in

denial of counsel. *Custis*, 511 U.S. at 493-97. In applying *Custis* to cases

decided under the Guidelines, *Garcia* stated: "we hold that with the exception of a

collateral attack based on the complete denial of counsel, a district court

sentencing a defendant under the career offender provisions of the Guidelines

cannot consider a collateral attack on a prior conviction." *Garcia*, 42 F.3d at 581.

Courts have construed "denial of counsel" narrowly. In *Custis*, the

Supreme Court held that ineffective assistance claims did not amount to denial of

counsel. *Custis*, 511 U.S. at 496. Similarly, in *Garcia* we rejected the contention

that the defendant was denied counsel because he was not given his own lawyer

but rather was represented by the same attorney as his co-defendant brother.

*Garcia*, 42 F.3d at 573, 581. In *United States v. Simpson*, 94 F.3d 1373, 1381

(10th Cir. 1996), we further held that a claim that counsel entered a guilty plea

without consent of the defendant did not amount to a "complete denial of

6

counsel" and could not form the basis of a collateral attack at the sentencing phase.

Although Mr. Roe arguably had a constitutional right to counsel at the California sentencing hearing, *see Gagnon v. Scarpelli*, 411 U.S. 778, 781 (1973) (finding that *Mempa v. Rhay*, 389 U.S. 128 (1967), held that defendant had a right to counsel at the sentencing hearings following the revocation of probation), under the facts of this case we find that Mr. Roe was not subjected to "complete denial of counsel" within the meaning of *Garcia*. Had Mr. Roe not opted for the *in absentia* proceeding, after completing his Colorado term, he would have been sent to California for sentencing– at which point counsel would have presumably been available to him. Mr. Roe waived his rights to this process because he recognized the advantage of having his Colorado and California prison terms run concurrently. To secure this benefit, Mr. Roe, on his own initiative, contacted the California district attorney to request what amounted to sentencing *in absentia*. Mr. Roe obtained the benefit of this arrangement: reduction of his overall term of incarceration by seven months.

Further, *Custis* and *Garcia* carved out limited exceptions to the general rule prohibiting collateral attacks for instances where the *conviction* was obtained in denial of counsel. *See Custis* 511 U.S. at 488; *Garcia,* 42 F.3d at 578. In this case, however, Mr. Roe's conviction in California was secured with counsel, and

7

resulted in four year's probation. The only issue to be determined by the hearing was the sentence for the probation violation. Mr. Roe seeks to equate his lack of counsel in deciding to waive rights to appear (with counsel) at the sentencing hearing to "complete denial" of counsel in proceedings probing whether a party is guilty of the underlying conduct. In light of our holdings in *Garcia* and *Simpson*, this analogy will not prevail.

In closing, we note that within the context of his sentencing for the present offence, Mr. Roe's decision sixteen years ago to be sentenced *in absentia* and proceed without counsel is of minimal significance. Mr. Roe does not contest that the conduct underlying his Colorado conviction violated the terms of his California probation. In fact, it was the California court's revocation of Mr. Roe's probation which prompted him to contact the California district attorney. Had he not waived his rights through the *in absentia* process, Mr. Roe would in all likelihood have been returned to California after the completion of his Colorado term to face probation revocation proceedings. Relying on the letter to Mr. Roe from the San Diego District Attorney, the district court made specific note of the prosecutor's "good-faith intent" to seek Mr. Roe's return to California at the completion of his Colorado commitment. Upon return to California, Mr. Roe would have been subject to a two-, three- or four-year prison term for

violation of probation.[3] Even if Mr. Roe would have opted for the California sentencing hearing, given California's determinate sentence regime for probation violations, the shortest possible sentence would have been two years. A two-year sentence is enough to trigger the longer sentence in this case. Accordingly, the calculation of his sentence under Guidelines §§ 2K2.1 and 4A1.2 would have resulted in the same sentencing range as imposed by the district court.

For the foregoing reasons we AFFIRM the decision of the district court.

Entered for the Court


Michael W. McConnell
Circuit Judge

---

[3] While Mr. Roe was serving his Colorado term, the San Diego District Attorney wrote to the Colorado warden evaluating Mr. Roe's status in California as follows:

> The State of California has a determinant sentence law which allows for three possible sentences in certain cases. For the Offense with which Mr. Roe is charged, Violation of Probation following conviction of Assault with a Deadly Weapon (Penal Code section 245(a)(1)), the options are two, three and four years. In the absence of aggravating circumstances, the court will ordinarily select the middle sentence (three years).

R. vol. 1, ex. 18.